## John M. Castner, Appellant, *vs.* Jacob G. Gunther, Respondent.

In an action between adverse claimants, brought under the provisions of the Act prescribing rules and regulations for the execution of the trust arising under the Act of Congress relating to the entry of town sites, the Supreme Court is required, upon appeal, to review and pass upon questions of fact as well as of law, and must examine the evidence, and determine for themselves what facts are established.

The Defendant in such an action, cannot deny the title of the Plaintiff, except upon the terms of setting up a valid title in himself.

Where the occupants of a town site have made proper application to have the lands entered for their use and benefit, and have shown, by proofs adjudged to be sufficient, that they have performed the conditions necessary to entitle them to have the land so entered, their right to the lands is perfected, and no person can thereafter, by mere settlement and improvement, acquire a right, under the law, to any portion of said town site, as against said occupants.

Where, upon an appeal from the decision of the Register and Receiver, and of the Commissioner of the General Land Office, the Secretary of the Interior decided that the application to enter a town site should have been allowed—and directed the local office to permit the entry to be made in accordance with such application and decision—the local or other land offices cannot, by requiring or permitting the lands to be entered upon a new application, or upon new or additional proofs, or by a person or officer other than the one who made the application upon which such decision was rendered, impair the rights of the occupants to the full benefit of the decision made in their favor.

If, after the Judge of the proper county has made an application to enter a town site, his term of office expire before a final decision allowing such entry, and his successor is permitted to make the entry in accordance with such application and decision, the lands will be held by the latter upon the same trust as though they had been entered by the officer who made the original application.

The decision of the Secretary of the Interior, of December 18, 1857, in favor of the entry of the town site of Mankato, was rendered upon the application of Judge Chatfield, and upon proofs thereon submitted by the occupants, on the 21st of March, 1856, and the entry thereof on the 6th of March, 1858, though made by Judge Flandrau, was for the purpose of carrying into effect the decision in favor of Judge Chatfield's application ; and was allowed and approved upon the proofs previously, on the 21st of March, 1856, submitted, and not upon proofs [offered] at the instance of the Register and Receiver, at the time of such entry.

This is one of a large number of cases pending in the District Court of Steele county, (upon change of venue from Blue Earth county,) brought by certain parties claiming under the Municipal Pre-Emption Law of 1844, the land having been entered as the town site of Mankato, on the 6th day of March, 1858.

This cause was tried before a Referee, upon whose report judgment was entered in favor of the Defendant. The Plaintiff appealed to this Court from the judgment entered on the Referee's report.

The issues of law arising in the case were partially settled in the case of *Leech vs. Rauch*, 3 *Minn.*, 448.

The opinion contains a full statement of the issues of law and fact, as contained in the pleadings, as well as a review of the facts proved upon the trial.

Points and authorities of Respondent.

1st.—In this case is involved the construction of an act of Congress passed May 23d, 1844, entitled " An Act for the relief of citizens of towns upon lands of the United States, under certain circumstances," as both parties claim deeds of lands entered under the provisions of said act.

2d.—The said act of Congress is not a Pre-Emption Law, and only provides for the entry of towns; it does not contemplate building towns, but allows the entry of towns made. It is an act for the relief of citizens of towns, &c.

3d.—A person must be an occupant of the lot which he claims, within the meaning of the Act of Congress, or he is not entitled to a deed therefor; and it must be for town purposes. *Ontanagon Town Site Case, Vol. 6, Mich. R., p.* 149.

4th.—A person must be an actual occupant (and citizen) of the lot, to entitle him to the deed. Constructive occupancy is not known to the law of Congress. *Ibid.*

5th.—The Act of Congress contemplates vacant lots which would be impossible under the theory of constructive occupancy. *Ibid.*

6th.—The State Courts have nothing to do with what transpired at the Land Office as to what proof was offered, who

offered it, nor, indeed, whether any proof at all was offered. *Leech vs. Rauch, vol.* 3, *Minn. R., p.* 448.

7th.—The Act of Congress allows the entry of the lands embraced in a town, by a trustee, for the use and benefit of the occupants, and authorizes the Legislatures of the States or Territories to make rules and regulations for the execution of the trust, for the disposal of lots, and the proceeds thereof. The Legislative Act of the Territory, of March, 1855, directs the trustee to convey the same to the person or persons who shall have, possess, or be entitled to the right of possession or occupancy thereof, according to his, her, or their several and respective rights or interest in the same, as they existed in law or equity, at the time of such entry of such lands. *Session Laws*, 1855, *p.* 29, *sec.* 2.

8th.—No equities could arise to the title to the land in favor of any person, until the entry. No party could claim any equities to enforce a title until the town was actually, and in fact, entered; for the law guarantees nothing to the settler, or citizen even, but provides a means through which relief may be obtained. There is no law making it the duty of any officer or person to enter it in trust. *Ontonagon Town Site Case.*

9th.—The proofs upon which the town was entered, were offered upon the application of Judge Flandrau, March 6th, 1858, and it is immaterial whether a new application, or a new proof was necessary or not.

10th.—The Land Officers, or the Department, cannot by any acts or ruling of theirs, settle the rights of the parties in this case. These rights depend upon the construction of a aw, which is exclusively within the jurisdiction of the judiciary.

SANFORD & BE VERIDGE, Counsel for Appellant.

WILLARD & BARNEY, Counsel for Respondent.

*By the Court.*—EMMETT, C.J.—This is an action between adverse claimants to certain lots in the town of Mankato, brought under our Statute of March 3, 1855, the lands em-

braced within the town having been entered by the County Judge, under the provisions of the Act of Congress, of May 23, 1844, commonly called the " Town-site Law."

The action provided by this Statute, for determining the interests of adverse claimants, is, in some respects, peculiar, especially in regard to the pleadings, and the manner of determining questions of fact upon an appeal, or writ of error ; and these peculiarities will first receive our attention. It is first provided, that each and every person claiming to be a beneficiary of lands entered as a town site, under the Act of Congress above referred to, shall, within a certain time, file with the person or authorities who may have so entered the same, a statement containing an accurate description of the particular lot, part or parcel claimed, and his specific right, interest, or estate therein, or be forever barred of all right to claim or recover the same. When, if there are adverse claimants, and their controversy is not settled by agreement in writing between the parties, or by arbitration within three months from the time of the entry, either party may then bring an action against the other in the District Court. The Plaintiff, in such action, is required to state in his complaint the lots or lands claimed by him, and to set out his own title; but merely alleges as to the Defendant, that he claims some interest or estate therein, or some portion thereof. The Defendant, then, is not at liberty, as in an ordinary action to recover the possession of real property, simply to deny the allegations of the complaint, and put the plaintiff to the proof of his case. He cannot deny the Plaintiff's right or claim to the lands, without he sets forth his own title thereto ; and if he fails so to state his own title, his denials may be stricken out on motion, and judgment rendered for the Plaintiff. The pleadings, as thus made up, simply put in issue the merits of the several titles ; and the party having the better title, which is determined by priority of claim and settlement, recovers as against the other, notwithstanding he may not have such a title in himself as would have enabled him to maintain ejectment.

If the Defendant cannot deny the title of the Plaintiff without setting up his own, it follows that he must set out a

title, which, if proved, would be good in itself ; otherwise he might avoid the requirement of the Statute, and obtain all the benefits of a denial, and put the Plaintiff to proof, by merely setting up a title, confessedly sham or frivolous.   I take it that the Statute must be complied with, according to its spirit and intent, and that a Defendant cannot dispute the title of the Plaintiff, unless he states one in himself, which would be good if the facts stated were to be admitted as true. And if in this the party Plaintiff has any advantage of position, the fault lies in the Statute itself.   The main objects of requiring each party thus to spread the particulars of his title upon the record, would appear to be, that the Court may be enabled to determine whether it is valid, as stated, and to advise the other party of the facts on which the claim is based.

If, therefore, the Plaintiff in this action had set forth a title bad upon its face, the Defendant might have demurred ; but if, on the other hand, the Plaintiff has stated a title, which, if admitted, would entitle him to a deed of the lots claimed by him, it is good as against the Defendant, and cannot be disputed until the Defendant sets up in himself one equally as good ; and if the title of the Defendant, as stated by himself, is imperfect or bad upon its face, he is in no better condition than if he had not answered at all.

The complaint alleges that the Plaintiff, and nine others whom he names, on or about the 14th day of February, 1853, settled, occupied and improved certain described lands, under the Act of Congress of May 23, 1844.   That afterwards they and those claiming under them, caused an application to be made to enter said lands, under the Act of Congress.   That the same were thereafter duly entered in trust for them, and those holding under them, and that prior to the commencement of this action, he became, by partition, relinquishment and conveyance from the original claimants, entitled to a several property in the lots which are the subject of controversy. These facts, if true, entitle the Plaintiff to the property, as against any one not claiming by a prior settlement or occupancy.

The Defendant denies each of the allegations material to the Plaintiff's claim, and alleges a title in himself, by vir-

tue of a settlement and improvement made on one of the lots in March, 1857, by one Ulrich, the grantor of the Defendant, and on the other lot by himself, in April of the same year.

Now, whether the Defendant can have the benefit of these denials of the Plaintiff's title, depends, as we before stated, upon the sufficiency of the title which he sets up in himself; and this, in turn, depends upon the condition of the title to the lands within the town, at the time of the alleged entries by Ulrich and the Defendant, in March and April, 1857. That is to say, whether said lands were then so situated that any person could acquire title to any portion thereof, by an original entry, claim and occupancy, under the law of 1844.

There is nothing in the pleadings themselves which will enable us to determine the exact condition of affairs in regard to the title to the lands within the limits of the town at this time. The answer, it is true, alleges that the land was then government land, and that the entries by the Defendant and Ulrich, were long prior to the time the town was entered by the county judge. But this, of itself, is not enough ; for as we shall endeavor to show, the right to a title to these lands may have become fixed, or vested in prior occupants, long anterior to the date of the actual entry by the judge, and long prior to the time when the claim of the Defendant is alleged to have originated. We must, therefore, resort to the evidence to ascertain the facts by which we can determine when the lands ceased to be the lands of the public, and when the rights of the occupants, for whose use and benefit the lands when entered, became vested—and if it shall be found that the title of the Defendant, as stated by his answer, had its origin subsequent to this time, it follows not only, that he acquired no rights by the settlements under which he claims, but is in no condition to deny the title of the Plaintiff, if the complaint alleges an entry, settlement and occupancy, at a time when the right to a title might thus be acquired.

In examining questions of fact in cases arising under the act of March 3, 1855, the appellate court cannot, as in ordinary civil actions, content itself with the finding of the inferior tribunal, if sufficient evidence can be found to sustain the

verdict of the jury, or decision of the judge or referee ; but the Statute makes it the duty of the Court, on the request of either party, to review and pass upon all questions and conclusions of fact as well as law ; and to this end, all the evidence is required to be reduced to writing, and included in the return to the appellate court. And if the judgment of the Court below is reversed, even on a question of fact, we are obliged to make a final disposition of the case in accordance with our own finding, except in the single instance where the fact has been passed upon by a jury, in which case only, a new trial must be awarded in the Court below.

This, in effect, gives to the parties an appeal from the decision of the facts, as well as the law, and the questions come to us, as original questions, to be determined by the evidence before us, and without regard to former findings ; for, as we cannot avoid the responsibility of passing upon questions of fact as such, we must be permitted to determine for ourselves as to what facts are established.

The policy of imposing such a duty upon this Court, especially in cases where the facts depend upon the conflicting testimony of witnesses, examined in open court, may well be doubted ; but as the facts which we deem material to the decision of this case, are mostly, if not wholly established by record evidence, we have less hesitation in drawing our own conclusions, than we should feel, had they depended upon oral testimony alone.

The following facts are, in our opinion, fully established by the evidence in the case :

That, in the autumn of 1855, shortly after the lands had been surveyed by the general government, Judge Chatfield, as the county judge, (there being no corporate authorities,) made application to enter, under the provisions of the Act of Congress of May 23, 1844, certain lands therein described, as a town site, by the name of Mankato, in trust for the use and benefit of the occupants thereof. That, in pursuance of such application, proof of a compliance with the requirements of said act, was submitted at the proper land office, on or about the 21st day of March, 1856. That, thereupon, the local land-officers held and decided, upon the proofs so submitted, that

the said applicant was entitled to, and might enter under said
act, all the lands embraced in said application, except frac-
tional lot No. 3, which said lot 3, was then claimed as an
agricultural pre-emption by two different claimants, to wit-
Rathbun and Maxfield. That as to said pre-emption claim—
ants, the said land-offices decided against the claim of the said
Rathbun, but were equally divided in opinion as to the claim
of the said Maxfield. That an appeal was thereupon taken to the
Commissioner of the General Land Office, from that part of
the decision, refusing to permit said lot 3 to be entered as a
part of the town site; but the decision respecting the right to
enter the remainder of the lands included in Judge Chat-
field's application, was not appealed from; nor does it appear
that the right to enter such lands, for the benefit of the occu-
pants, was ever contested by any one, but the whole contest
was confined to said fractional lot, 3. That the lots which
are the subject of controversy in this action are not included
in said lot 3, but are within that portion of the lands applied
for, which was, at the outset, adjudged to belong to the occu-
pants of the town. That this contest respecting the right to
said lot 3, was, upon appeal, decided by the Commissioner of
the General Land Office, in favor of Maxfield, one of the
pre-emption claimants. That upon a further appeal, this con-
test was, on the 18th day of December, 1857, finally decided
in favor of the town site, and the local officers were there-
upon instructed " in pursuance of said decision," to permit
said lot 3 to be entered as a part of the town site, as well as
the other lands described in the original application, and
about which there had been no dispute. That the original
decision, made March 21, 1856, awarding to the occupants all
but lot 3, being made upon proofs then submitted, depended
necessarily upon the settlement, occupancy and improve-
ments shown to have been made prior to that time. That the
final decision as to lot 3, depended, as between the pre-emp-
tion claimants and the occupants of the town, upon the facts
as they existed at the time the pre-emptors entered upon the
said lot, which was sometime in 1855; and that the proof of
these facts, whenever taken, whether before the original de-
cision of the Register and Receiver, or afterwards, while

the appeal was pending, were directed almost exclusively to what had been done or omitted prior to the time of the pre-emption claimant's entry. That the several decisions as to the right of Judge Chatfield to enter the lands, whether made by the local office, or upon appeal, were predicated wholly upon proofs which were before the tribunal making such decision. That the final decision in favor of the right of the occupants to all the lands included in Judge Chatfield's application, was not made contingent upon anything thereafter to be done, except to enter and pay for the lands; and it was directed, by the tribunal making such decision, that the entry should be permitted in accordance therewith. That by said final decision it was in substance and effect, adjudged and determined, that at the time of Judge Chatfield's application to enter the town site of Mankato, he was entitled, and should have been permitted to enter, for the use and benefit of the occupants, all the lands embraced in his application. That prior to said final decision, Judge Flandrau, having succeeded Judge Chatfield in the office of Judge, made a new application to enter as the town site of Mankato, all the lands embraced in the application of Judge Chatfield, except said lot 3; and the local officers permitted him so to enter; but upon this becoming known to the department at Washington, such entry was summarily set aside as unauthorized and irregular, the Commissioner expressly holding and deciding that no new application was necessary. That after the setting aside of this entry, and after the final decision of the Secretary of the Interior, the local officers being directed to permit the lands to be entered by the proper person or authority in pursuance of said decision, Judge Flandrau, as the then Judge of the proper county, made a new application to enter the lands, in accordance with the decision of the Secretary of the Interior. That this application was in fact, although not so specified in the application, made by Judge Flandrau as the successor of Judge Chatfield, in accordance with, and for the purpose of securing to the parties entitled thereto the benefit of said final decision. That although two witnesses were examined at the time of this new application by Judge Flandrau, yet

it does not appear that any new facts were elicited, or that any of the improvements by them mentioned were made since the date of Judge Chatfield's application, while the settlement and laying out of the town are stated to have been done prior to that time. That the parties desired, and at first applied to have this entry made upon the proofs which had already been submitted and passed upon by the Secretary of the Interior; and that the additional proofs were offered at the instance and suggestion of the Register and Receiver who expressed doubts as to whether the department would otherwise approve of the entry. They however avowed their willingness to dispense with further proofs. That it does not appear that any importance was attached to these new proofs by the department; on the contrary the question of the right of Judge Chatfield to enter all the lands applied for had been determined, upon the proofs already submitted, and the instructions to the Register and Receiver were in direct terms " to permit the entry " of certain lands, describing them as in Judge Chatfield's application, and to transmit the certificate and receipt in a special communication. That thereupon Judge Flandrau was permitted to enter the same lands which the Secretary had adjudged to belong of right to the town, and the officers allowing said entry made return thereof as directed, together with the additional proofs taken, and the entry, being afterwards approved, was by order of the department directed " to be patented in the order, and at the same time it would have been patented in the regular series, had the entry been permitted on the 21st of March, 1856, the date on which the proof was submitted to the district office."

In view of these facts then, when did the interest of the occupants become vested in that portion of the town in which the lots here in controversy are situated? Was it as early as A. D. 1855, when Judge Chatfield made his application to enter, or at the time that the proofs were submitted in March, 1856, or not until the actual entry by Judge Flandrau?

In *Leach vs. Rauch,* 3 *Min. Rep.,* 448, this Court expressed its views of the law of 1844, as applicable to the entry of the town of Mankato, so far as it was necessary in order to decide the action then pending; and it was then in substance decided

that, when the occupants of a town have complied with the requirements of the act of 1844, or at farthest, when they have, by proofs found to be sufficient, shown that they have so complied, they are *eo instanti* entitled to the benefits of that act, and to have the trust established and declared in their favor; that so far as the occupants were affected by the mere date of the entry, if the town site of Mankato was entered upon the proofs submitted on the 21st day of March, 1856, then the entry, although not made until March 6, 1858, related back to the time when the proofs were submitted, and that when once the conditions are shown to have been performed the rights of the occupants attach then, if not before, and cannot in any manner be affected by a delay on the part of the government to issue the patent.

This decision was upon the ground that the rights of the occupants, after they have done all that the law requires of them, cannot be lessened or otherwise prejudiced by the government delaying the discharge of its duty. And the principle applies with equal force to delays in permitting the entry after a favorable decision has been rendered; to delays in rendering the decision after the necessary facts have been established by competent proofs; and, for anything that I can see to the contrary, to delays in hearing the case after the application to enter has been made. But if the rights of the occupants who have performed all the conditions necessary to entitle them to enter, are not fixed, as against the government, and all who come afterwards, as early as the date of their application to enter, or at least when sufficient proof thereof has been submitted; but remain indeterminate and uncertain in extent, and subject to be reduced by the coming in of new occupants up to such time as the land officers will permit the entry of the lands, or render their decision; or to such time as they, in their discretion, may adjourn the hearing, after the filing of the application and tender of proofs; then they are wholly at the mercy of the land officers, and any one else, who may see fit to oppose the entry of the town. After application made, and proofs tendered, the local officers may be unable, possibly unwilling then to hear it, and therefore may adjourn the hearing to suit their convenience, or whim,

and when at length a hearing is obtained, the decision may be still deferred. And if the right to enter be contested by a pre-emption claimant the matter is still worse, for whether the contestant be a *bona fide* claimant or a mere volunteer, time must be given to both parties to prepare and produce their proofs; and although the local officers may at once decide against the pre-emption claimant, yet he has the right to appeal, first to the Commissioner of the General Land Office, and then to the Secretary of the Interior. All this consumes time, and it can readily be seen how, in this way, and without any fault of the occupants, the actual entry may be deferred indefinitely.

That the entry of the town of Mankato was allowed and approved upon the proofs originally submitted in March, 1856, and that taken afterwards during the contest, but before the decision of the Secretary of the Interior, we do not entertain a doubt; and although at the instance of the Register and Receiver, additional, but merely cumulative evidence, was submitted, at the time of the actual entry, yet it does not by any means follow that this proof alone was the predicate of the entry.

We might however admit, for the purpose of the argument, that these new proofs of facts previously proved to the satisfaction of the department, were all that were taken into consideration at the time of the entry and subsequent approval; and yet, the occupants having shown that, at the time of Judge Chatfield's application, they had performed all the conditions necessary to authorize him to enter the lands for their use and benefit, and the tribunal of the last resort having so adjudged, it would not be in the power of any officer or set of officers, to deprive occupants of their rights under this decision, by requiring or permitting an entry to be made upon other proofs, or by another applicant. Judge Flandrau would hold the title, even in such a case, in trust for the benefit of those interested under the decision of the Secretary of the Interior, and stand in the same relation to the beneficiaries under the trust, as Judge Chatfield, had he continued in office and been permitted to make the entry.

It is however claimed by the Defendant's counsel, upon

the authority of a decision of the Supreme Court of the State of Michigan, that the individual occupants of towns entered under the act of 1844, can take such lands or lots only as are in their actual possession, and that any lands or lots not so occupied, belong to the citizens at large, or to the town for the common benefit of all. I have always inclined to this opinion, but as Justice Flandrau has declined taking part in the decision of this case, the other members of the Court have not been able to agree upon the abstract proposition here presented. We do not however see how the proposition whether true or false, can affect the decision of this case; for after the right to enter the lands for the benefit of the occupants, is once established, it would be equally unjust to permit them to be interfered with, by those who may come afterwards, whether the lands are all to be divided among those occupying them, according to their respective interests or claims, or a part belongs to the town at large. In the one case the trespass is upon the individual occupant,—in the other upon the rights of the whole body of the inhabitants of the town.

The Defendant's title is predicated upon the assumption that up to the time of the actual entry of a town site, under the act of 1844, every one has the right to settle upon and occupy any vacant lot or parcel, and may by these means secure the title after the entry is made. Now whatsoever may be the rights acquired by such a settlement, if made prior to the time of the performance of the conditions necessary to authorize the entry of the lands as a town site, we cannot recognize this right after these conditions have been performed by prior occupants, and they have not only made application to have the same entered for their use and benefit, but have shown by proofs adjudged to be sufficient, that they are entitled to have the land so entered. In *Leech vs. Rauch*, we held that when this had been done, the right of the occupants to receive the benefit of the Act of Congress is as perfect as it can ever become, and that the right exists in favor of the persons who have performed the conditions on which it is based. This ruling, applied to the present case, disposes of the Defendant's claim of title, for, as we have found, the oc-

cupants of the town, as early as March 21, 1856, showed by proof adjudged to be sufficient, that they had performed all the conditions necessary to entitle them to have entered for their use and benefit, the lands, of which the lots here in controversy are part and parcel, and this was long before the date of the settlements under which the Defendant claims title.

Had these facts appeared from the pleadings, then the title stated by the Defendant would have been bad upon its face, because at the time stated in the answer, no one could acquire title to the lots by mere settlement and occupancy, and the setting up of such a defective title would not have authorized the Defendant to deny the title set up by the Plaintiff. The title being defective, the denials would have been stricken out, which would have left the Plaintiff's title confessed.

We are of opinion that the answer was bad, because it set out a defective title in the Defendant, in that it did not show that the entries or settlements under which the Defendant claims, were made at a time, when the right to a title could be thus acquired. The mere allegation that they were made long before the town was entered by the Judge is not sufficient, as we have endeavored to show, because the right to the lands thus entered, might have been, and as the proofs show, was actually vested in the occupants of the town, long before the entry by the Judge.

But even admitting that the answer was not bad on demurrer, or would not have been stricken out on motion for this alleged defect, it does not necessarily follow that the Plaintiff must in the trial of the case be put to the proof of his title, unless we should hold that the omission of the Defendant to allege a fact material to his title, but which fact does not affect the title of the Plaintiff, puts the Defendant in a better position, than if he had alleged the fact, and gives to him the benefit of denials, which otherwise he would not have been entitled to make. If the Defendant by concealing a fact on which his title depends can put the Plaintiff upon his proofs, then the provision of the statute which makes the denial of the Defendant contingent upon his stating a title in himself is avoided at the will of the Defendant, and the whole

object of the provision is frustrated; for the Defendant has only to avoid stating the fact in his answer, and although the Plaintiff on discovering the omission, may allege its existence in the reply, yet the Defendant is not even then put to a denial, because no further pleading is necessary to put the fact at issue. We do not think the statute can thus be avoided, and are of opinion that a Defendant does not state his title within the meaning of the statute when he omits any fact on which that title depends. And if he does so omit, and on the trial the fact is found to exist, we are disposed to hold that he is then in the same condition that he would have occupied had the fact been stated in the answer.

It is not necessary to the recovery of the Plaintiff in this action, that his title as alleged, should be taken as admitted by the pleadings. There is abundant in the evidence to satisfy us that the town was first settled, laid out and occupied by the Plaintiff and the other persons named in the complaint, and that they and those claiming under and through them performed the conditions necessary to bring the lands within the provisions of the act of 1844. That they and those claiming under them were occupants, within the meaning of said act, at the time of Judge Chatfield's application to enter, at the time the proofs were submitted upon which the decision of the Secretary of the Interior was made, at the time of said decision and at the time of the actual entry by Judge Flandrau; and that they, according to their respective interests, are beneficiaries under the trust created by such entry, to the utter exclusion of all who claim by settlement or occupancy subsequent to the time when these conditions are shown to have been performed, That although the original entry and settlement made by the persons named, may have been for the joint interest of all, yet they had a right to and did sever their interest. That by such division the lots here in controversy fell to the share of the Plaintiff. That he has ever since claimed them in severalty, and that none of those, who were originally joint claimants, nor any one claiming through them or either of them, are shown to claim these lots, or any interest therein adversely to the claim of the Plaintiff.

And as matter of law applicable to these facts, we hold,

that the sufficiency of the proofs to justify the decision of the Secretary of the Interior, and the entry of the lands in accordance therewith, cannot be the subject of inquiry in actions between claimants under such entry.   That the Plaintiff's occupancy and claim in severalty, of lots in which others are jointly interested, is good as against a mere stranger, and whether the deed conveying the interest of the other joint claimants to the Plaintiff was void or not, if the grantors therein have not claimed adversely to him and filed the statement of their claim as required by the act of 1855, their claims are barred.   And that as against the Defendant, the Plaintiff is entitled to a deed for the lots which are the subject of this action.

Numerous questions as to the admission and rejection of testimony, by the referee, were raised on the argument, which, under the view we have taken of the whole case, it will be unnecessary to consider in detail.   We will only say generally, in regard to them, that all testimony concerning improvements or claims, made by others than those through whom the parties claimed title, was irrelevant and should not have been admitted.   That it was improper to admit evidence of what a witness may have said on a former trial between other parties, without first asking the witness whether he had so stated, so that he might have an opportunity to explain. And if he, when so interrogated, denied the statement, then evidence that he did so state would have been properly received.   But if the witness admitted that he had made the statement, there was no necessity of proving it afterwards, and his explanation should have been received for what it was worth.

But the merits of this controversy were not involved in these questions.   Who were the occupants for whose use and benefit the town site of Mankato was entered, and when did their rights become vested, were the material questions in this case. The referee to whom the case was submitted found as a question of fact, that the town was not entered upon the proofs submitted March 21, 1856, but upon the proofs of occupation and settlement which were submitted on the 6th day of March, 1858, when the entry was actually made ; and held in

effect, as matter of law, that the rights of the occupants did not vest until the day the land was entered by the Judge. That the entry was for the benefit of all who were at that time in the occupancy of the lots, in proportion to their respective interests; and that up to that time, any person going upon and occupying lots not actually resided upon by others, might by such settlement and occupancy acquire a title, thereto.

We, however, cannot find, in the mere fact that additional proofs were submitted on the 6th of March, 1858, at the suggestion of the local land officers, sufficient to satisfy us that the entry, then made, was allowed or approved, wholly or principally upon these new proofs.   On the contrary,—in view of the fact, that the Secretary of the Interior had deliberately adjudged by the decision of December 18, 1857, that the proofs previously submitted were sufficient to authorize the entry of all the lands embraced in Judge Chatfield's application, the fact that there never had been any contest except as to fractional lot No. 3; the fact that the Register and Receiver were expressly directed to permit the entry in accordance with such final decision; the fact that although the local officers suggested additional evidence, they yet expressed their willingness to permit the entry upon the proofs already submitted and passed upon; and the fact that the department afterwards directed the lands to be patented at the same time that the patent would have been issued "had the entry been permitted on the 21st of March, 1856, the date on which the proof was submitted to the district office"—we are fully convinced that the entry was allowed and approved on the proofs originally submitted.

And as matter of law, we hold that after the final decision of December 18th, 1857, it was not in the power of any officer, by requiring or admitting new or additional proofs, or by requiring or admitting the entry to be made by any person other than Judge Chatfield, to interfere with the rights of parties as they existed under said decision.   That "the rights of parties as they exist at the time of the entry," depend upon and are controlled by the rights of parties as they existed at the time that the Act of Congress was shown to have been

complied with. That the entry, when made, related back to the time when the rights of the occupants became vested; that Judge Flandrau occupies the same relations to the bene· ficiaries that Judge Chatfield would have occupied had the latter entered the land in pursuance of his application; and that after the said 21st of March, 1856, no person could acquire any rights to these lands, under the Act of Congress of May 23, 1844, by mere settlement, occupancy or improvement.

The judgment of the District Court in favor of the Defendant is reversed, and judgment rendered in this Court in favor of the Plaintiff, as demanded in his complaint.

FLANDRAU, J., having been formerly connected with the controversy involving this title, as attorney, and having entered the land as trustee, took no part in the decision.