# VILLAGE OF EXCELSIOR v. MINNEAPOLIS & ST. PAUL SUBURBAN RAILWAY COMPANY.[1]

Nos. 16,126—(87).

April 8, 1909.

**Notice of Argument — Computation of Time.**

*Held,* following Coe v. Caledonia & Mississippi Ry. Co., 27 Minn. 197, and State v. Weld, 39 Minn. 426, and overruling Greve v. St. Paul, Stillwater & Taylor's Falls R. Co., 25 Minn. 327, that, in the computation of the ten days' notice of argument required by rule 8 of the supreme court, the day of service should be excluded, and the first day of the term included.

July 16, 1909.

**Stopping Railway Car at Street Crossing — Mandamus.**

A writ of mandamus was issued to defendant suburban railroad company to compel it to stop its cars at a point in the plaintiff village. Defendant was authorized to operate its lines within the limits of the village under an ordinance provision that it should carry passengers within the village limits on the payment of the specified fare. The village subsequently passed an ordinance requiring railroad and street cars, which occupied public streets for the purpose of operating upon and along the same, to stop such cars at grade crossings of streets when any persons required to enter or alight from such cars. It is *held* that mandamus did not lie to compel defendant to stop at the designated place because:

1. The ordinance was not a legitimate exercise of the police power.

2. Defendant's lines did not in fact occupy a street, and were not located upon and along a street, but were constructed upon its own right of way.

3. The ordinance was opposed to public policy; under the general law, defendant was not a mere street railway company, but had the legal status of a suburban railway with the power to condemn lands (Minneapolis & St. P. S. Ry. Co. v. Manitou Forest Syndicate, 101 Minn. 132, followed); the requirement that a suburban railroad should stop at every street intersection to take on and discharge passengers tended to destroy its usefulness as a carrier of passengers and to destroy competition with steam railways; and the observance of the ordinance did not subserve public convenience.

On petition by the village of Excelsior to the district court for Hennepin county an alternative writ of mandamus issued to compel

[1]Reported in 120 N. W. 526, 122 N. W. 486.

defendant street railway company to stop its cars at the intersection of its railway and George street in Excelsior, when passengers desired to board or leave the cars. From an order, John Day Smith, J., sustaining the demurrer of petitioner to the answer and return, the railway company appealed. Reversed.

A motion to continue the case for the reason that the notice of argument was not served in time was denied.

*N. M. Thygeson, John F. Dahl,* and *D. R. Frost,* for appellant.

*Julius E. Miner,* for respondent.

On April 8, 1909, the following opinion was filed:

PER CURIAM.

Motion to continue the case for the reason that the notice of argument was not served in time. Rule 8 provides that "cases shall be noticed for argument at least ten days before the first day of the term." If this rule be construed so as to exclude the day of service and include the first day of the term in the computation of the ten days, the notice in this case was duly served; otherwise, not.

In the case of Greve v. St. Paul, Stillwater & Taylor's Falls R. Co., 25 Minn. 327, it was held that the rule excluded from the computation both the day of service and the first day of the term. No reason for the decision was given. Some two years later practically the same question was before the court in the case of Coe v. Caledonia & Mississippi Ry. Co., 27 Minn. 197, 6 N. W. 621, and the court construed a statute which provided that a notice of election should be posted "at least ten days prior" thereto. The notice in the case cited was posted on May 13, and the election was held on the twenty-third of the same month. The court held that the notice was posted in time for the reasons following: "The general rule is that where notice is required to be posted or published a specified number of days before an event of which notice is to be given, the required number of days is computed by excluding the day of first posting or publishing, and including the day on which the event is to occur. Worley v. Naylor, 6 Minn. 123 (192); Arnold v. Nye, 23 Mich. 286, 293. This is in accordance, also, with the rule prescribed by our statute with reference to the computation of time in civil actions.

G. S. 1878, c. 66, § 82 [R. L. 1905, § 5514, subd. 21.] No reason can be given why a different rule should obtain in cases arising otherwise than in civil actions, nor why the law should not be consistent in following the statutory rule in all instances to which it is logically applicable by analogy." This indirectly overrules the Greve case. Again in State v. Weld, 39 Minn. 426, 40 N. W. 561, the court construed the statute as to the serving notice of trial in the district court, which required the notice to be served "at least eight days before the term," and held that in the computation of the eight days the day of service should be excluded and the first day of the term included.

The result of the decisions referred to is that the proper construction of rule 8 is left uncertain, and the Greve case has become a stumblingblock. There is no reason why the rule should not be construed in harmony with the rule of the statute, but every reason why it should be. We therefore hold, following Coe v. Caledonia & Mississippi Ry. Co. and State v. Weld, and expressly overruling Greve v. St. Paul, Stillwater & Taylor's Falls R. Co., that in the computation of the ten days' notice of argument required by rule 8 of the supreme court, the day of service should be excluded and the first day of the term included.

Motion denied.

On July 16, 1909, the following opinion was filed:

JAGGARD, J.

On the petition of the village of Excelsior, the district court issued a writ of mandamus to the defendant and appellant suburban railway company. To an answer and return of the defendant the plaintiff village demurred on the ground that it did not state facts sufficient to constitute a defense. The demurrer was sustained, with leave to defendant to amend. This appeal was taken from the order to that effect.

It appeared that defendant was authorized by ordinance to operate its lines within the limits of the village under provisions which included the following:

"Sec. 8. Said Minneapolis & St. Paul Suburban Railway Company, its successors and assigns, shall have the right to charge and

collect five cents, and no more, for each passenger traveling on any of said lines of street railway or parts thereof, within the village limits of the village of Excelsior; provided, however, that the payment of said five cents shall entitle the passenger so paying the same to one continuous ride from any point in the village limits in the village of Excelsior located along any of said lines to any other point within the village limits of the village of Excelsior, located along any of said lines; provided, however, that no fare shall be required for children under six years of age when traveling with or attended by an adult having paid one full fare."

Subsequent to the construction of defendant's lines, the village passed an ordinance which is as follows:

"Any person, company, or corporation driving or propelling, or requiring to be driven or propelled, any railroad car or street car which occupies the public streets, avenues or alleys of the village of Excelsior for the purpose of operating upon and along same, shall stop such cars at any and all of the intersections or crossings of streets when any person or persons require to enter or alight from such cars, provided such crossings are grade crossings."

It was sought under this ordinance to compel defendant to stop its car at a place where its line in plaintiff village was intersected by George street. In point of fact defendant was willing to establish a stopping place three-fourths of a mile distant, where its lines divided, and one line passed up Water street. Within the village limits west of this stopping place six village streets intersected defendant's tracks.

The plaintiff contends that the ordinance requiring defendant to stop at George street was a legitimate exercise of police power. For present purposes it may be conceded that the village council had the authority to pass a proper ordinance in the exercise of such power. Such an ordinance must have reference, however, to public peace and safety and the good order of persons or agencies upon the streets. Upon the assumption that such power existed, the village had the right to pass reasonable ordinances regulating, inter alia, the speed of traffic and the stoppage of cars. Incidentally such ordinances would conduce to the convenience and comfort of the community. It by no means follows, however, that an ordinance designed entirely

for the comfort and convenience of the inhabitants is a valid exercise of the police power. The ordinance in question cannot by any reasonable construction be regarded as the result of the exercise of the police power. Under its terms cars are allowed to operate without restriction, except "when any person or persons require to enter or alight from such cars." The element of danger to users of the highway is effectually ignored. The right to mandamus based upon the police power must therefore be eliminated.

The question then arises whether the terms of the ordinance applied to the facts in this particular case. The defendant urges that their fair construction compels the conclusion that they do not apply. They refer expressly to lines of the defendant which occupy and which are located upon any public street. At the place in question defendant did not occupy a street—had not constructed its lines along the street, but on its own right of way. On Water street it had constructed its lines along the street. The mandamus, however, did not purport to affect Water street. It is true that defendant's lines crossed streets and alleys; but that fact did not bring defendant within the provisions of the ordinance, for it was held in Minneapolis & St. P. S. Ry. Co. v. Manitou Forest Syndicate, 101 Minn. 132, 112 N. W. 13, that "the crossing of streets and alleys, incidental to constructing a railroad from place to place, does not constitute the occupancy of such streets or alleys for the purpose of operating a railway thereon, within the provisions of section 2841, R. L. 1905, and a railroad company has the right to acquire by condemnation, under section 2916, R. L. 1905, a right of way over the streets and alleys of cities and villages and over private property within such limits, without securing a franchise from the municipal authorities." There is obvious cogency in this argument; but in view of the great importance of the public question involved we feel unwilling to rest the decision on this ground alone, or to abstain from the determination of the larger questions involved.

We are of opinion that the contract with the village under which defendant operated its lines did not authorize the ordinance. It is obvious that section 8 must be reasonably construed. It is clear that the provisions, literally construed, would be void. An ordinance may require under given conditions that a street car must

stop at the end of any block, or at the middle of long blocks, or at railroad crossings, or at places where fire engines may suddenly emerge. But a requirement that a car must stop at every point at which a passenger may wish to enter or alight would be destructive, not only of the purposes for which the corporation was authorized to transact business, but would also completely demoralize traffic, and would be, the authorities generally agree, without legal force. It is equally clear that a proper construction of the charter provisions must have reference to the situation as a whole, and be determined with due regard to all relevant circumstances. The subject is not to be regarded from a narrow or local point of view. The reasonableness of an ordinance, it is elementary, is a question of public policy. Public policy necessarily involves a consideration of a number of important facts appearing on this record.

One of these considerations is that the respondent company has a somewhat anomalous legal status. Under the charter provisions which have been herein quoted, it would appear to be a street railroad. In Minneapolis & St. P. S. Ry. Co. v. Manitou Forest Syndicate, supra, however, it was held that defendant was not a mere street railroad company, but was organized to construct and operate interurban railroads from place to place, and as such had the right to exercise the power of eminent domain. A construction which would give to special legislation by a village or city an effect which would render nugatory rights exercisable under general laws would be subject to obvious and substantial objections.

Another consideration is that the principal business of the respondent is to furnish rapid transportation of passengers between various points around Lake Minnetonka and the people of cities to the east and of the surrounding district to the west. In this business respondent had the competition of two steam railroads. If the principle for which the village contends would be adopted, respondents might be compelled to stop at so many street crossings as to seriously hamper, and possibly to destroy, its competitive power. It is clearly opposed to public policy to secure to steam railroads monopoly of local passenger traffic. As Summers, J., said in Townsend v. City, 78 Ohio, 122, 134, 84 N. E. 792, 793, 16 L. R. A. (N. S.) 914: "If every city and village through which such a railway [as the one at bar]

passes may require its cars to be stopped at every street intersection to take on or to discharge passengers, and to serve the purposes of a street railway, then its usefulness as a means of interurban transportation may be very much limited, because so much time will be consumed in passing through cities and villages that it will no longer be practicable for many to travel in that way."

A final consideration is that the ordinance does subserve the public convenience in the village. The distance between the place at which the cars are sought to be stopped, George street, and the place at which defendant offers to stop the cars, at Water street, is inconsiderable. The population between the two points is sparse. How many people would use a stopping point is conjectural; but it is plain that the number would be very small. The inconvenience resulting to the altogether larger number of persons carried to more distant points would inevitably tend to decrease the extent of train service. The eventual diminution in the number and speed of cars, especially if the principle invoked was applied to a great extent, would appear to more than equal any possible advantage. The weight to be given to this custom is undoubtedly diminished by the fact that this matter rests largely in the discretion of the village council.

After examination of the question as a whole, we have concluded that the proper course is to reverse the decision of the trial court.

Reversed.