CHARLES A. COE and others *vs.* CALEDONIA & MISSISSIPPI RAILWAY COMPANY, impleaded, etc.

September 28, 1880.

**Municipal Aid to Railways—Notice of Election—Time.**—Under Sp. Laws 1875, *c.* 132, notice of the time, place and object of a meeting to vote upon the question of issuing bonds to aid in the construction of a railway was required to be posted in three public places "at least ten days prior" to such meeting. *Held*, that notices posted on the 13th day of May, of a meeting to be held on the 23rd day of the same month, were sufficient.

Same—Conditions on Issue of Bonds—Location of Station.—Sp. Laws 1875, c. 132, authorized certain villages and towns in certain counties "to issue bonds * * to aid in the construction of any railway running into, or proposed to be built through, either of the counties aforesaid." *Held,* that inasmuch as this act does not prohibit it, it is competent for the legal voters of such villages to impose such conditions upon an issue of bonds voted by them under the act as they may deem best, provided such conditions are not in violation of any express provision of statute, or not prohibited by any general rule of public policy. *Held,* that it is proper for such villages to impose, as one of such conditions, a condition as to the place where the depot of the railway proposed to be aided shall be located.

Same—Several Elections and Issues of Bonds.—*Held,* that there is nothing in said act to prevent the holding of more than one election, or the voting of more than one issue of bonds thereunder, the authority of such villages being unlimited in those respects.

Same—Constitutional Limitation of Amount.—The effect of certain votes of bonds, to be issued by the village of Caledonia, under certain acts of the legislature, considered (upon the facts appearing) with reference to that provision of the constitution which forbids the legislature to authorize any municipal corporation to issue bonds, or become indebted in any manner, to aid in the construction or equipment of any or all railroads, to any amount exceeding 10 per centum of the value of the taxable property of such corporation, as shown by the last assessment for taxation previous to the incurring of such indebtedness.

The plaintiffs, resident tax-payers and freeholders in the village of Caledonia, in Houston county, brought this action in the district court for that county to restrain the defendant Buell from delivering to the defendant railway company, and the railway company from receiving from him, certain bonds of the village, amounting to $20,000, voted in aid of the railway, and executed by the town officers, and by them placed in escrow in the hands of defendant Buell. The railway company appeals from an order of *Page, J.,* overruling its demurrer to the complaint, the substance of which is stated in the opinion.

*W. H. Harries* and *Cameron & Losey,* for appellant.

*Wilson & Gale,* for respondents.

The petition on which the special election was called being coupled with the condition that the railway company should

erect and permanently locate its depot on the land described in it (the same mentioned in the opinion) was void, (1) because the act under which it was made provides for no conditions, and hence the petition was not in the form prescribed by the statute; (*Munson* v. *Town of Lyons*, 12 Blatch. 539; *People* v. *Adirondack Company*, 57 Barb. 656; *Musser* v. *Fairmont, etc., R. Co.*, 7 Am. Law Reg. 284; *Butternuts & Oxford Turnpike Co.* v. *North*, 1 Hill, 518; *Fort Edward R. Co.* v. *Payne*, 15 N. Y. 583;) and (2) because the condition for the location of the depot at a particular place as a condition of the bonus is against public policy. *Munson* v. *Town of Lyons*, 12 Blatch. 539; *Fuller* v. *Dame*, 18 Pick. 472; *Bestor* v. *Wathen*, 60 Ill. 138; *Jacksonville, etc., R. Co.* v. *Mathers*, 71 Ill. 592; *St. Joseph, etc., R. Co.* v. *Ryan*, 11 Kans. 602; *Marsh* v. *Railroad Co.*, 64 Ill. 414; *Holladay* v. *Paterson*, 5 Oregon, 177; *Williamson* v. *Chicago, Rock Island & Pac. R. Co.*, 4 N. W. Rep. (N. S.) 870. And the condition cannot be rejected as surplusage, but the whole contract must be held void. *Kimbrough* v. *Lane*, 11 Bush, 556; *Lindsay* v. *Smith*, 78 N. C. 328; *Alexander* v. *Owen*, 1 Term Rep. 225; *Wellyams* v. *Bullmore*, 32 Beav. 574; 1 Addison on Contracts, § 300.

The bonds are void because the notice of election on May 23, 1879, was posted on May 13, 1879, and less than ten days prior to the election called. Statutes authorizing municipal indebtedness in aid of railways must be strictly pursued. *Town of Wellsborough* v. *New York & Canada R. Co.*, 76 N. Y. 182; *People* v. *Hurlburt*, 46 N. Y. 110; *People* v. *Spencer*, 55 N. Y. 1; and in such proceedings the election is a nullity where the notice thereof is not given for the prescribed time. *Williams* v. *Roberts*, 88 Ill. 11; *People* v. *Hurlburt*, 46 N. Y. 110; *People* v. *Fort Edward*, 70 N. Y. 28. The statute requires the notice to be posted "at least ten days" prior to the election, and this means that ten clear days must elapse between the posting and the election, exclusive of the day of posting and that of the election. *Greve* v. *St. Paul, S. & T. F. R. Co.*, 25 Minn. 327; *Wilson* v. *Thompson*, 26 Minn. 299;

State v. Brown, 22 Minn. 482; Rex v. Justices of Hereford-shire, 3 Barn. & Ald. 581; Zouch v. Empsey, 4 Barn. & Ald. 522; Regina v. Justices of Shropshire, 8 Ad. & El. 173; In re Prangley, 4 Ad. & El. 781; Mitchell v. Foster, 12 Ad. & El. 472; Blunt v. Heslop, 8 Ad. & El. 577; Young v. Higgon, 6 M. & W. 48; Gorst v. Lowndes, 11 Simons, 433; Peables v. Hannafor l, 18 Me. 106; Buttrick v. Holden, 8 Cush. 233; Marvin v. Marvin, 75 N. Y. 240; Small v. Edrick, 5 Wend. 137; Phelan v. Douglass, 11 How. Pr. 193; Commercial Bank v. Ives, 2 Hill, 355; Judd v. Fulton, 10 Barb. 117; Miller v. Lefever, 4 N. W. Rep. (N. S.) 929. In Warsop v. City of Hastings, 22 Minn. 437, the only question made by the appellant as to the notice of election was whether it was published prematurely, and the point now made was not made or passed on.

By the election of March 19, 1875, the power to vote aid under the act of 1875 was exhausted. Jones on R. R. Securities, § 268; People v. Town of Waynesville, 88 Ill. 469; Danville v. Railroad Co., 43 Vt. 144; State v. County Court of Daviess Coun'y, 64 Mo. 30; Musser v. Fairmont, etc., R. Co., 7 Am. Law Reg. 284.

BERRY, J. This is an appeal from an order overruling a demurrer to a complaint. The question is, does the complaint state facts constituting a cause of action?

The important allegations of the complaint are these: On March 11, 1874, the village of Caledonia voted to issue bonds to the defendant in the sum of $12,000. This was done under Sp. Laws 1874, c. 59. On March 19, 1875, the village voted to issue bonds to the defendant in the sum of $8,000, additional to the $12,000 before voted. This was done under Sp. Laws 1875, c. 132. It does not appear that either of these votes was based upon any proposition or agreement upon the part of the defendant, nor that it has been followed by any action on the part of the defendant by which it has bound itself to perform the conditions upon which the bonds were to be issued, so as to create any mu-

tual engagement between it and the village; neither does it appear that the defendant has at any time claimed to be entitled to any of the bonds thus voted to be issued, or that it has demanded any of them, and none of them have been issued.

On May 23, 1879, the village voted to issue bonds to the defendant in the sum of $20,000. This also was done under Sp. Laws 1875, *c.* 132. This vote was based upon a written proposition on the part of the defendant, by which it agrees, in consideration of $20,000 of bonds to be voted and issued by the village, that it will "build and construct its railroad from Sumner, in the county of Houston and state of Minnesota, * * * to the said village of Caledonia, and have the cars and locomotives running thereon, and will build and erect its depot, and permanently locate the same, on the land reserved for that purpose by James H. Cooper, in his west addition to the village of Caledonia, and lying and being on the west side of Kingston street, in the corporate limits of said village of Caledonia, on or before the first day of October, 1879, and will not ask, demand or receive the bonds * * * mentioned, unless said railroad is so built and constructed, with the cars and locomotives running thereon, and the said depot is built and located at the place above designated: * * * *provided*, * that the said bonds be delivered into the hands of the Hon. D. L. Buell, in escrow, to be by him delivered to the said * * * company, only upon compliance with the foregoing proposition on the part of said company." The proposition, containing many other provisions in addition to those above recited, was in terms submitted to the voters of the village at the election at which the issue of $20,000 was voted, and was in terms accepted by the village, and the bonds were accordingly executed and delivered to Buell in escrow.

1. Sp. Laws 1875, *c.* 132, under which this vote was had, provides for a special meeting of the legal voters of the village to vote upon the question of issuing bonds to aid in the

construction of a railway, and that notice of the time, place,. and object of the meeting shall be posted in three public places, "at least ten days prior thereto." In the case before us, the notices were posted on the 13th of May, and the meeting held on the 23rd of the same month. The time of notice was sufficient. The general rule is that where notice is required to be posted or published a specified number of days before an event of which notice is to be given, the required number of days is computed by excluding the day of first posting or publishing, and including the day on which the event is to occur. *Worley* v. *Naylor*, 6 Minn. 123 (192;). *Arnold* v. *Nye*, 23 Mich. 286, 293. This is in accordance, also, with the rule prescribed by our statute with reference to the computation of time in civil actions. Gen. St. 1878, c. 66, § 82. No reason can be given why a different rule should. obtain in cases arising otherwise than in civil actions, nor why the law should not be consistent in following the statutory rule in all instances to which it is logically applicable by analogy.

2. The plaintiff contends that the vote of May 23, 1879, to issue bonds to the amount of $20,000, was unauthorized, and therefore void, on account of the condition in reference to the location of the depot. The statute (Sp. Laws 1875, c. 132,) authorizes the village of Caledonia, and other villages, etc., in Fillmore and Houston counties, to "issue bonds  *  *  *  to aid in the construction of any railway running into, or proposed to be built through, either of the counties aforesaid." Section 4 provides that upon a petition of ten freeholders of any such village, etc., for a special meeting of the legal voters thereof, "stating the sum in bonds desired to be furnished, and the railway proposed to be aided," it shall be the duty of the proper authorities to call such meeting, "stating in the notice thereof the time, place and object of the meeting." "The voters at such meeting shall vote upon the question by ballot. Those voting in favor of issuing bonds shall have written or printed on.

their ballots the words, 'Shall bonds be issued? Yes.' Those opposed to issuing bonds shall have written or printed on their ballots the words, 'Shall bonds be issued? No.'"

The position of the plaintiff, in effect, is that these provisions of statute (and they are all that are important here) authorize the village of Caledonia simply to vote an issue of its bonds, in a designated amount, to aid in the construction of a designated railway, without any conditions of any kind. From this position we have no hesitation in dissenting. In direct opposition to it, we are of opinion that inasmuch as and because the act of 1875 does not prohibit conditions, it is entirely competent for the legal voters of the village to impose such conditions upon an issue of bonds voted by them under such act as they may deem best; provided, of course, that they are not in violation of some express provision of the act mentioned, or some other statute, and are not prohibited by any general rule of public policy. This seems to us to be so apparent as to require no argument to support it.

The plaintiff, however, contends that the proposition of the railway company, and the condition of the vote as to the location of the depot at the particular place named, are against public policy, because they introduce, or may introduce, an element or motive into the proceedings through which the issue of bonds is to be brought about, by which the ten freeholders who petition for the meeting, and a majority of the legal voters, may be improperly influenced—that is to say, influenced by considerations of private or personal interest, pecuniary or otherwise; an interest not shared by the village in general, or perhaps hostile to the public interest.

It seems to us that the counsel's criticism of the proposition and vote in this case, and the reasoning by which he attempts to support it, are altogether too refined and elusive to be of any practical value or importance. When a village or town proposes to lend its credit in aid of the construction of a railroad, it is ordinarily a question of considerable importance where the depot shall be placed so as to best subserve

the general interest and convenience of the inhabitants and business of the municipality; but it is not one of those things which can be made the subject of a mathematical demonstration. What is the best place for the depot is matter of opinion. In this respect it stands upon the same footing as the question of the advisability of a proposed issue of bonds. We can conceive of no reason why the opinion of a majority of the electors should not be permitted to determine one question as well as the other, nor why that opinion should not be expressed at the election in the one case as well as in the other. And it would seem to be a very proper and effective way for the voters to express and carry out their opinions and preferences as to the location of the depot, by imposing the adoption of a designated location as a condition of the issue of the bonds. The same kind of objections (as respects the conflict of private and public interest) which are urged by the counsel against a condition in regard to the location of a depot, could be urged with equal force against the simple issue of bonds without any such conditions, in every case, with hardly a conceivable exception.

The construction of a railway into a town or village always and inevitably operates to the peculiar advantage of some, over and above the general advantage, as well as to the peculiar disadvantage of some. Yet considerations of this kind have not prevented the legislature of this and other states, in a vast number of instances, from authorizing municipal subscriptions and bonds in aid of such construction. This settles the question of public policy. It shows that the legislature has not regarded the existence of motives of private and personal advantage, of the kinds mentioned, as furnishing any reason why such subscriptions and bonds should not be authorized and voted. In our opinion the condition as to the location of the depot was a proper condition, and in no way invalidated the petition or the vote. It may be added that there is nothing in this condition which binds the company to refrain from locating such other depots in, or in the

vicinity of, the village as the convenience of the public may require.

3. The plaintiff further contends that the act of 1875 authorized but one election to be held by the village of Caledonia for the purpose of voting bonds in aid of railway construction, and that one election having been held on March 19, 1875, the election of May 23, 1879, was wholly unauthorized and a nullity. We find nothing in the act of 1875 to countenance this position, either expressly or by implication. The provisions of the act are that the villages and towns mentioned, including the village of Caledonia, "are hereby authorized to issue bonds as hereinafter provided, to aid in the construction of any railway," etc., and that *whenever* ten freeholders shall petition the proper authorities of their municipality for a special meeting to vote upon the issue of such bonds, the authorities shall immediately call such meeting, etc., and that if a majority of the votes cast at such meeting is in favor of issuing bonds, the authorities shall proceed to cause them to be issued, etc. Certainly, there is nothing here to prevent the holding of more than one election, or the voting of more than one issue of bonds. On the contrary, so far as the act of 1875 is concerned, the authority of the villages and towns mentioned is, in these respects, unlimited.

4. By an amendment of the constitution of this state, adopted in November, 1872, it is declared that "the legislature shall not authorize any county, township, city, or other municipal corporation, to issue bonds, or to become indebted in any manner, to aid in the construction or equipment of any or all railroads, to any amount that shall exceed ten per centum of the value of the taxable property within such county, township, city, or other municipal corporation; the amount of such taxable property to be ascertained and determined by the last assessment of said property, made for the purpose of state and county taxation, previous to the incurring of such indebtedness." Const. art. 9, § 14b. The amount of taxable property in the village of Caledonia, as shown by the

last assessment before the vote of May 23, 1879, to wit, the assessment of 1878, was $330,000; hence the plaintiff claims that, as the amount of bonds voted in 1874, to wit, $12,000, and the amount voted in March, 1875, to wit, $8,000 additional, and the amount voted in May, 1879, to wit, $20,000, altogether amounting to $40,000, exceeds the ten per centum limit, to wit, $33,000, fixed by the constitution, the last vote, therefore, is void.

No bonds have as yet been issued to the defendant under either of the first two votes. Whether the vote of $20,000 in 1879 was intended to supersede the previous votes, and whether the act of 1875 supersedes and repeals the act of 1874, are questions not necessary to be determined upon the facts before us in this case. It is enough that, as held in *State* v. *Town of Lime*, 23 Minn. 521, the votes of 1874 and 1875 were, so far as the facts appearing show, in effect standing offers on the part of the village to the railway company; offers upon the performance of which the company had a right to insist, upon its own compliance with the terms upon which the offers were made. But the company was not obliged to accept the offers. It might accept them and claim their fulfilment, or it might refuse to accept them. And, as in other cases, the refusal might be express, as by a formal resolution of the proper authorities, or it might be implied from some conduct inconsistent with a claim of acceptance, or amounting to a waiver.

Now, whatever may be the *status* of the votes of 1874 and 1875, (independent of the vote of 1879,) as it appears that no bonds have been issued under them, we think the effect of the vote of 1879, and the claim of its benefits by the company, is to waive any right of the company to both of them. The vote of 1879, it is to be remembered, was based upon a formal proposition on the part of the company, the effect of which, when it was accepted by the village, would appear to be to create a complete contract between the village and company, the obligations of which were mutual; and in this

action the company, both upon the allegations of the complaint and its appearance in the action, is claiming the benefit of the vote of 1879. Now, if the *status* of the votes of 1874 and 1875 is such that (irrespective of the vote of 1879) the company would be entitled to claim the amounts voted in 1874 and 1875—to wit, $12,000 and $8,000, respectively— then the effect of the vote of 1879, based upon the company's proposition as before mentioned, and the claim of its benefits by the company, is a waiver of any right under one or the other of the votes of 1874 and 1875. That is to say, the company can no longer claim both. By its proposition and claim under the vote of 1879, the company, in effect, says to the village : We ask an issue of bonds to the amount of $20,-000, and as this is inconsistent with a claim of both of the two amounts previously voted, inasmuch as we cannot have all three without a violation of the constitution, we waive our right to one of the first two.

This seems to us to be the correct view of the facts and law of the case, as they are presented in the complaint, and as this disposes of the important points relied upon in support of the complaint, we are of opinion that the complaint failed to state facts entitling the plaintiff to an injunction forbidding the delivery of the bonds issued under the vote of 1879, or their receipt by the company, or the delivery of bonds for one or the other of the amounts voted in 1874 and 1875. But we wish to reiterate that we do not pass upon the *status* of the bonds voted in 1874 and 1875, the facts stated in the complaint not enabling us to do so.

Order reversed.