THOMAS A. COLBURN, APPELLANT, V. JOHN W. MCDONALD, INTERVENER, APPELLEE.

FILED OCTOBER 5, 1904. No. 13,444.

1. **County Bonds: REFUNDING: APPEAL.** Chapter 8 of the laws of 1899, commonly known as the "Refunding Bond Act," as found in chapter 9 of the Compiled Statutes of 1903, provides for an appeal from the findings of the district court as to the validity of county bonds sought to be refunded, and authorizes the supreme court to make a finding and decision in such a proceeding which is binding upon the county board, the protestant and other parties to the record.

2. **Procedure.** In such a proceeding we should attempt to do no more than render a decision as to the validity of the bonds, and thereby affirm or reverse the finding of the district court, as the case may be.

3. ———. It is not necessary in such a proceeding to determine the effect of the decision as to innocent purchasers of the bonds who are not parties to the record.

4. **Laws: ENACTMENT.** An enrolled bill found in the office of the secretary of state, signed by the officers of both branches of the legislature and approved by the governor, is *prima facie* evidence of its enactment.

5. ———: ———. "Legislative journals may be looked into for the purpose of ascertaining whether a law was properly enacted." *State v. Frank*, 60 Neb. 327.

6. ——: ——. "The silence of the legislative journals is not con-clusive evidence of the nonexistence of a fact, which ought to be recorded therein, regarding the enactment of a law." *State v. Frank*, 60 Neb. 327.

7. ——: ——. In order to overthrow such enrolled bill, it must be made to affirmatively appear by the journals that it did not pass.

8. Bonds: VALIDITY. A proposition to vote bonds to aid in the con-struction of a railroad or other work of internal improvement, otherwise in due form, will not be rendered void because it con-tains a clause authorizing the county to accept capital stock of the company.

9. ——: ——. Where, by the terms of the proposition voted on, the bonds are not to be issued until a future time and on the hap-pening of a future event, the assessed valuation of the county last made before such bonds are actually issued should be taken as the basis in limiting the amount of such issue.

10. ——: REPUDIATION. A municipality ought not to be allowed to repudiate its bonds after the compromise of a suit, in which their validity was in issue, by which it received a substantial decrease of the interest rate thereon, and after it has paid the interest for 30 years and a part of the principal thereof, unless such bonds were absolutely void at the time they were issued.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*E. F. Pettis* and *Strode & Strode,* for appellant.

*Sawyer & Snell* and *Robert Ryan,* for appellee.

BARNES, J.

This case comes before us strictly under the provisions of chapter 8 of the laws of 1899, found in chapter 9 of the Compiled Statutes of 1903 (Annotated Statutes, 10780). It appears that on the 28th day of November, 1871, the county of Lancaster voted bonds to the amount of $100,000 to aid in the construction, extension and completion of the Midland Pacific Railway from the city of Lincoln to a junction with the Union Pacific Railroad. The bonds were dated January 1, 1873, and were delivered to the railroad company at about that time. The company in turn de-

livered $100,000 of its stock to the county board, which was retained until November 2, 1881, when the same was sold and the money covered into the county treasury. Interest was paid on these bonds continuously until January, 1885, at the rate of 10 per cent. per annum. In August of that year one Charles E. Lewis commenced a suit against the county in the circuit court of the United States for the district of Nebraska on a large amount of these bonds. The county board filed its answer, and the issues were made up, the question involved being the validity of the bonds. On the 22d day of April, 1886, and before the trial, the county and Lewis compromised the suit; all of the bonds were called in and stamped as bearing only $5\frac{1}{2}$ per cent. interest, instead of 10 per cent., the rate at which they were issued, and thereupon the case was dismissed. From that time until the first day of January, 1903, the date when the bonds became due, the interest was regularly paid at the new rate agreed upon when the suit above mentioned was compromised and dismissed. Shortly after the bonds became due, there being no funds in the treasury for their payment, the county undertook to refund them under the provisions of the act above mentioned. Notice was published in the manner provided by law, and on the day appointed therein, one Thomas Colburn, a resident and taxpayer of Lancaster county, filed his protest and objections with the county board, by which he sought to prevent its proposed action. The county attorney thereafter made out and filed with the clerk of the district court for Lancaster county, a statement containing a complete history of the bond transaction in question, which showed the payments and the amount due on said bonds. Thereupon, one J. W. McDonald, a holder of one of the bonds, intervened, and at the first session of the district court thereafter that tribunal made a finding in which it was stated that the bonds were a valid obligation against the county of Lancaster, and that there was due thereon the sum of $98,000. From that finding Colburn, the protestant, has appealed to this court.

31

It is contended on behalf of the intervener, McDonald, that no appeal lies in these proceedings, and that therefore this court has no jurisdiction; and it is insisted that the question is determined by *Nebraska Loan & Trust Co. v. Lincoln & B. H. R. Co.,* 53 Neb. 246. It is apparent, however, that the cases are distinguishable. The statute under consideration here authorizes an appeal to the supreme court from a decision of the district court, and provides the manner of taking such appeal. Notice thereof must be given at the time of the decision, and within 20 days the party appealing must give a bond in the sum to be fixed by the court; and the statute (sec. 39, ch. 9, Compiled Statutes, 1903, Annotated Statutes, 10781), then says: "If appeal in the foregoing manner is taken it shall stay proceedings on the part of such corporate authorities until such appeal is decided." So that the statute itself discloses the sense in which the word "appeal" is used. It appears that this statute has been compiled with, and that this court has jurisdiction to determine the questions presented herein.

It will be observed that this is neither an action at law nor a suit in equity, but is a special proceeding provided for by the terms of the refunding act above mentioned. Therefore our jurisdiction and all our powers herein are conferred and measured by the terms of the act itself. The county board is a proper party to this proceeding, and the protestant, together with the intervener, McDonald, are before the court. This gives us the power to examine the questions involved in this proceeding, and our judgment herein will be binding upon the parties to the record. We will therefore proceed to determine the questions involved in this controversy as to such parties without attempting to adjudicate the rights of those bondholders who are not parties to the record.

It is contended that the act of 1869 (laws 1869, p. 92), under the provisions of which the bonds in question were issued, was never legally or constitutionally passed by the legislature, and is therefore void. To support this con-

tention an abstract of the house and senate journals relating to the passage of that act is put in evidence. This copy or abstract fails to show in perfect form or order each successive step which occurred in the passage of the act, and in describing the bill its title was not always referred to in exactly the same language; but the journals do not show that the act, in the precise form in which it was signed by the chief officers of the house and senate and approved by the governor, was not passed. We think that it has finally become the settled law of this state that the enrolled bill signed by the officers of both houses and approved by the governor, as found in the office of secretary of state, is *prima facie* evidence of its due enactment. It is true that the legislative journals may be looked into for the purpose of ascertaining whether the law was properly enacted, but the silence of these journals is not conclusive evidence of the nonexistence of a fact which ought to be recorded therein regarding the enactment of a law. "Every presumption is in favor of the regularity of legislative proceedings; and it is rather to be inferred that the journals are imperfect records of what was done than that the legislature failed to perform the more solemn and important duties enjoined upon it by the constitution." So it must be made to affirmatively appear by the journals that the act in question did not pass. To hold otherwise would be to permit a mute witness to prevail over the *prima facie* case made by the bill itself. *State v. Frank*, 60 Neb. 327. The evidence introduced by the protestant being insufficient to show affirmatively that the act in question was not regularly and constitutionally passed by the legislature, this contention must fail.

It is next claimed that the act of 1899, under which this proceeding is prosecuted, was not constitutionally passed, and is therefore void. Answering this contention, we may say that the evidence introduced to support it is of the same kind and nature and of no more binding force than that introduced in relation to the passage of the act of 1869. It does not affirmatively show that the act was not

regularly and constitutionally passed, and the holding on this question must follow the rule announced above.

It is further claimed that the fact that the proposition on which the bonds in question were voted authorized the county to receive $100,000 of the stock of the Midland Pacific Railway at the time of the delivery of the bonds rendered them void. An examination of the proposition contained in the record shows that the bonds were to be issued "to aid in the construction, extension and completion of the Midland Pacific Railway," and we are not, at this time, and in this proceeding, prepared to hold that the mere fact that the corporation was to and did deliver $100,000 of its stock to the county, which it retained and sold, rendered the bonds void. The supreme court of the United States in the case of *Chicago, B. & Q. R. Co. v. County of Otoe,* 16 Wall. (U. S.) 667, held that there is no solid ground of distinction between a subscription to stock and a donation. It is not necessary for us to go that far in this opinion, because the proposition provided for a *donation* of the bonds to the railway company, not a stock subscription, and simply authorized the county to receive $100,000 of stock. The bonds in the case above cited were issued under the act in question herein, and were declared to be a binding obligation on the county. We are therefore satisfied that the proposition in question was not void. 20 Am. & Eng. Ency. Law (2d. ed.), p. 1102; *Mayor and Aldermen of Wetumpka v. Winter,* 29 Ala. 651; *Nelson v. Haywood County,* 87 Tenn. 781, 11 S. W. 885.

It is further contended that there was an overissue of bonds, in this: That the bonds in question, together with the amount previously issued, exceeded 10 per cent. of the assessed valuation of the county. We find it stipulated in the record that the assessed valuation of Lancaster county for the year 1871 was $3,184,036; that bonds in aid of works of internal improvement had been issued at that time to the amount of $330,000. So it appears that, if the bonds had been actually issued in 1871, such issue would have amounted to more than 10 per cent. of the assessed valua-

tion of the county. But it also appears from the stipulation that the assessed valuation of the county for the year 1872 was $4,482,117; that the bonds were issued during that year, bore date January 1, 1873, and were delivered about that time. It thus clearly appears that there was no overissue of bonds if the assessed valuation for the year 1872 should govern. The language of the act under which the bonds were issued is as follows: "That any county or city in the state of Nebraska is hereby authorized to issue bonds to aid in the construction of any railroad, or other work of internal improvement, to an amount to be determined by the county commissioners of such county or the city council of such city, not exceeding ten per cent. of the assessed valuation of all taxable property in said county or city; *Provided,* The county commissioners, or city council, shall first submit the question of the issuing of such bonds to a vote of the legal voters of said county or city." (Laws 1869, p. 92.) Construing this law in the case of *Chicago, B. & Q. R. Co. v. Dundy County,* 3 Neb. (Unof.) 391, we held that the time when municipal bonds were issued was when the municipality actually parted with their custody and control. It was held in the case of *Union P. R. Co. v. Board of Commissioners of Davis County,* 6 Kan. 256, that the vote authorizing the issuance of railway bonds was not the contract between the county and the railroad company; that such vote simply authorized the county board to enter into a contract, which was consummated and completed when the bonds were issued. In *Rathbone v. Board of Commissioners of Kiowa County,* 27 C. C. A. 477, 83 Fed. 125, it appeared that certain county bonds were issued under the laws of Kansas, which limited such issue to a certain proportion of the assessed valuation of the county. It was contemplated that the bonds should not be issued prior to December 31, 1887; none were issued until August of that year, and it was held that, under this state of facts, the assessment for 1887, made as of March 1 of that year, was the one that controlled. This rule finds support in *School District*

*v. First Nat. Bank,* 19 Neb. 89; *Village of Kent v. Dana,* 40 C. C. A. 281, 100 Fed. 56; *Bound v. Wisconsin C. R. Co.,* 45 Wis. 543; *Falconer v. Buffalo & Jamestown R. Co.,* 69 N. Y. 491; *Coe v. Caledonia & M. R. Co.,* 27 Minn. 197, 6 N. W. 621. In the case at bar the proposition voted on did not contemplate that the bonds should be issued as of the date at which the vote was taken. They were to be issued and delivered from time to time as certain sections of the road were completed. They were in fact issued and delivered to certain trustees, to be turned over to the company at the proper time, just before the first of January, 1873. So, as a matter of fact, they were issued after the assessment of 1872 was made, and before the date of the assessment for the year 1873. According to the foregoing authorities the assessment of 1872 controls, and there was no overissue, as contended by the protestant.

If we are right in the foregoing conclusions, it is unnecessary to consider the other minor objections made to the validity of the bonds.

For the foregoing reasons, and in view of the further facts that the question of the validity of these bonds was put in issue by the pleadings in the suit between Lewis and Lancaster county in the circuit court of the United States for the district of Nebraska; that the suit was compromised; that in such settlement the county secured the benefit of the reduced rate of interest agreed upon therein; that it has ever since that time kept the interest on the bonds paid in full; and has paid and taken up a part of them, we are constrained to hold that the findings of the district court were right, and they are therefore

AFFIRMED.