HENRY BOSSEN, Respondent, v. S. A. OLSNESS, Commissioner of Insurance of the State of North Dakota, Appellant.

(182 N. W. 1013.)

**Insurance — state hail insurance—§§ 5, 9, and 11 of chap. 38, Session Laws of Special Session construed—state hail insurance does not apply automatically.**

Sections 5, 9, and 11 of chapter 38, Session Laws of Special Session 1919 (the state hail insurance law), are construed, and it is *held*:

    1. The insurance provided for in the law does not apply automatically.

**Insurance — classification of lands.**

    2. Where an assessor had not classified land as tillable and had made no return to the county auditor as required by law, showing the number of cultivated acres, and where the owner had not made the affidavit required by § 6 of the hail insurance act, his risk is not covered and he is not entitled to recover indemnity upon an attempted compliance with the law in the month of July after loss has been sustained through hail.

Opinion filed May 18, 1921. Rehearing denied May 27, 1921.

Appeal from District Court of Burleigh County, *Nuessle,* J. Reversed.

*Wm. Lemke,* Attorney General, and *George K. Foster,* Assistant *Attorney General,* for appellant.

"The crops insured under this act shall consist of all crops grown on cultivated land actually cropped, subject to and paying the taxes herein specified." Chap. 160 of the Laws of 1919 as amended by chap. 38 of the laws of the Special Session of 1919 (§5).

The court will take judicial notice of the fact that in this state there is a large amount of unbroken land. § 7938 subdss. 35, N. D. Comp. Laws 1913.

*Sullivan, Hanley,* & *Sullivan,* for respondent.

BIRDZELL, J. This is an appeal from an order overruling the defendant's motion to dismiss a petition for a writ of mandamus, and also overruling a demurrer to the petition. The essential facts set forth in the petition are in substance as follows: The plaintiff is and was, in the spring and summer of 1920, the owner of certain lands in Mercer county. In that year he cultivated a certain acreage of his land and sowed crops thereon as follows: 100 acres of wheat, 25 acres of flax, 20 acres of barley, 35 acres of millet, and 35 acres of corn. The assessor did not return to the county auditor any of the plaintiff's land as tillable land, nor did he file with the county auditor any return or certificate that any of the land was in crop and subject to the hail insurance premium tax, as he is required by law to do. During the month of July the crop was damaged by hail, and the loss was reported to the Hail Insurance Department in the State Capitol at Bismarck. It was subsequently adjusted and the adjustment accepted by the plaintiff. Sometime after the hail storm, the assessor made a certificate as to the number of acres cropped, and filed it with the county audi· tor. The Commissioner of Insurance, upon ascertaining that the plaintiff's land had not, before the storm, been classified as tillable nor certified as cropped, canceled the adjustment. The petition prays that the defendant be required to place the name of the plaintiff on the list of those who have sustained hail losses to be certified to the state auditor, and to certify also the adjustment as made.

The question presented is whether or not, under chap. 38 of the Laws of the Special Session 1919, land sown to crops is automatically insured against loss without classification and certification by the assessor or the owner. We are of the opinion that the hail insurance provided for under this act does not apply automatically, and that the necessary steps had not been taken to bring the plaintiff's risk within the operation of the law prior to his loss. The reasons for our conclusion may be briefly stated as follows:

The law provides (§6) for a flat rate of 3c per acre per year upon all tillable land, and for an indemnity acreage tax (§7) in sufficient

3

amount, when added to the flat tax, to cover the losses on all land
actually cultivated and cropped and not withdrawn from the operation
of the act. The duty of determining the tillable acreage for the pur-
pose of applying the flat tax devolves upon the assessor. In other
words, it is made his duty to classify the lands as tillable and non-
tillable. This classification is required to be certified to the county
auditor on or before June 1st of each year. In addition to the certifica-
tion of the tillable acreage, the assessor is required to return the number
of acres in crop or to be sown or planted to crop during the year (§9).
The owner, however, his agent, occupant, or tenant is required to make
an affidavit as to the number of acres actually cultivated and in crop,
or intended to be cultivated and put into crop (§11). And the owner
is bound, in case of loss by hail, to abide by the acreage stated in his
affidavit. The assessor is required to file the original with the county
auditor and to leave the copy with the owner. It constitutes his policy
of insurance. In the absence of the owner the return of the assessor
as to the crop acreage, description, etc., is filed with the auditor, and
the owner is bound by that return unless by a certain time, June 15th.
he withdraws his land from the operation of the law (§§ 11, 12).
The county auditor is required to keep the file of the affidavits pre-
sented by the assessors and forward duplicates to the Insurance Com-
missioner, with a tabulated statement showing the number of acres
classified as tillable land and cropped land (§ 13). Section 5 of the
law provides:

"The crops insured under this act shall consist of all crops grown
on cultivated land *actually cropped, subject to and paying the taxes
herein specified.*"

Under this law cropped land is only rendered subject to the pay-
ment of the taxes specified through the return made either by the
owner or the assessor. The *primary* duty of returning the statement
of cultivated acreage devolves upon the owner. The assessor cannot
exercise any discretion or independent judgment when the owner com-
plies with the law and makes a return. The law has provided no method
for increasing the acreage returned by him, and in case of loss he is
bound by the number stated in his affidavit. It seems clear that the
affidavit is equally conclusive for the purpose of applying the premium
or indemnity tax; for a copy of it is certified to the hail insurance
department and the tax imposed by that department is an "acreage

tax" sufficient to cover losses. Manifestly the insurance department cannot determine the acreage tax until it knows the number of acres to be subjected to the tax. And this it can only know from the returns made to it by the county auditors. There is no provision for revising these returns, or for assessing any acreage that might have been omitted from affidavits of owners and returns of assessors. If the plaintiff had not sustained loss, it is certain that, under the law, he could not have been rendered liable for any indemnity tax. No method is provided for rendering him liable in the absence of action by the assessor or his own voluntary return. Nothing could be more clear, we think, than that the legislature did not intend to enable owners to speculate by holding their land free from the tax, with the mental reservation that, in the event of a storm, they would submit to the tax and collect for their losses. This would not be insurance, but a fraud on those who, in good faith, co-operate to effect insurance under the law.

Upon the argument, reference was made to some amendments of the Hail Insurance Law adopted at the last regular legislative session (1921). These amendments simply render more clear the intention of the legislature to have the law applied in the manner hereinbefore indicated. In other words, they render absolutely certain that construction which was reasonably certain before the amendments. It follows from what has been said that the order appealed from is erroneous and must be reversed. It is so ordered.

ROBINSON, Ch. J., and CHRISTIANSON and BRONSON, JJ., concur.

GRACE, J. I concur in the result.