W. H. BROWN, Appellant, v. PORTER NELSON and the State Bonding Fund, State of North Dakota, Respondents.

(197 N. W. 223.)

**Insurance — affidavit under hail insurance law mandatory.**

1. It is the primary duty of the owner of land or the tenant, or the agent of either, in order to effect state hail insurance upon the crops grown upon such land, to make the affidavit or affidavits provided for in § 11 of chapter 77 of the Session Laws of 1921 (State Hail Insurance Law).

**Insurance — assessor held not liable to insured for investigation and view under hail insurance law.**

2. The State Hail Insurance Law provides that if the owner of the land or tenant, or the agent of either, be absent at the time the assessor visits the premises for the purpose of listing the property for assessment and for the listing of the land for benefits under said State Hail Insurance Law, or, if such owner or tenant or agent refuses or neglects to furnish the affidavit provided by said law to be furnished by the owner, tenant or agent, the assessor shall certify the number of acres cropped, the description of the land and the name of the owner and tenant, if any, and file the same with the county audi-

tor, and such owner and tenant shall be bound by such certificate as to the facts so certified. The assessor, under such circumstances, acting in good faith and within the scope of his authority, as defined by said act, who, after making an investigation and view of the premises for that purpose, certifies that no part of said land is in crop or to be cropped notwithstanding a portion of said land may then have been cropped, and which crop is wholly destroyed by hail, cannot be held liable in a civil action by such owner or tenant of the land who may have sustained loss to such crop by hail.

Opinion filed January 26, 1924.

Hail Insurance, 29 C. J. § 2 p. 205 n. 3.

In District Court, Burleigh County, *Jansonius,* J.

Action to recover damages from a township assessor.

Plaintiff has appealed from the judgment and an order denying a motion for a new trial.

Affirmed.

*Langer & Nuchols,* for appellant.

"It goes without saying that sureties on official bonds are liable for negligence or malfeasance of their principal in the performance of acts which are done virtute officii. Thus they are liable for the loss of official funds by their principal to the same extent as is the principal. The bond providing usually for the faithful discharge by the principal of his official duties, the condition of the bond is considered to have been broken by the mere negligence without corruption of the principal in the performance of a ministerial duty, which performance does not involve the exercise of discretion, and where the duty which has not been faithfully discharged was owing to the person injured such person may sue on the bond." 29 Cyc. 1455, § 2; Norton v. Kumpe, 121 Ala. 446, 25 So. 841; Hixon v. Cupp, 5 Okla. 545, 49 Pac. 927.

In Hixon v. Cupp, supra, the sureties of a sheriff were held liable for damage caused a prisoner through the sheriff's negligence.

An agent must exercise ordinary and reasonable care, skill and diligence in the discharge of his duty to his principal, and for his negligence in failing to do so he will be liable to his principal for any loss or injury occasioned thereby. 2 C. J. 720, § 381 and cases cited.

An agent whose duty it is to effect insurance for his principal must exercise due care and skill in so doing, and will be held liable for losses

resulting from his negligence in failing to effect the insurance. If an agent whose duty it is to effect insurance neglects to do so he is himself to be considered as the insurer and liable as such. 2 C. J. 730.

In order for the state bonding fund to escape liability as surety on the bond of the assessor for a loss occasioned by his negligent failure to perform a duty imposed upon him by law on the theory that the negligence of plaintiff contributed to the loss, it is necessary to show that plaintiff was guilty of gross negligence amounting to fraud or bad faith. Manchester Fire Assur. Co. v. Redfield (Minn.) 71 N. W. 709; Nathan Lieberman v. First Nat. Bank (Del.) 48 L.R.A. 514.

The directors may have been negligent in the discharge of their duties and this negligence may have enabled Mitchell for the time to misappropriate the funds of the bank, and to conceal its true condition by the false reports made to the comptroller of the currency and by false entries upon the books of the association. But this negligence cannot avail the sureties, who covenanted that their principal should well and truly perform the duties of his position. Their covenant is unconditional, and no failure of duty upon the part of the directors of the association, short of actual fraud or bad faith can be deemed sufficient to exonerate them from its performance. Graves v. Lebanon Nat. Bank, 19 Am. Rep. 50.

*George F. Shafer,* Attorney General, and *Charles Simon,* Assistant Attorney General, for respondent.

Public officers as a rule are answerable to private persons for injuries resulting from the negligent performance of their ministerial duties. 22 R. C. L. 484, § 162.

But no action lies for the negligent performance of an official duty which is judicial or discretionary in its nature, however gross or corrupt such neglect may be. The remedy in all such cases is by indictment or impeachment. 22 R. C. L. p. 485.

The general principle is that a public officer is not liable to an action if he acts unwisely in a matter wherein it is his duty to exercise judgment and discretion, even though a private person may be damaged thereby. Wilson v. Spencer, 135 N. W. 546.

The principle that a semijudicial officer should be protected from the consequences of a bona fide but erroneous official decision has been applied in a host of cases. 22 R. C. L. 485, § 164.

The liability of a public officer to an individual for his negligent acts or omissions in the discharge of an official duty depends altogether upon the nature of the duty as to which the neglect is alleged. Where his duty is absolute, certain, and imperative, involving merely the execution of a set task, in other words, is simply ministerial, he is liable in damages to anyone specially injured either by his omitting to perform the task or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, to be exerted or withheld according to his own judgment as to what is necessary and proper, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a lawful exercise of them, where no corruption or malice can be imputed, and he keeps within the scope of his authority. An officer possessing such discretionary powers is spoken of as a judicial or quasi-judicial officer, from the likeness of his discretionary functions to those of a judge, who decides controversies between individuals. Redf. Neg. 3d ed. § 156. See also Tholkes v. Decock, 52 L.R.A.(N.S.) 142 and notes.

PUGH, Dist. J. The plaintiff seeks to recover of the defendant damages which he alleges accrued to him by reason of alleged negligent failure and omission of the defendant, Nelson, as assessor of Cromwell township in Burleigh county, North Dakota, to list the land leased by plaintiff located in said township for state hail insurance, as, it is alleged, it was his duty to do as provided by chapter 77 of the Session Laws of 1921.

The facts necessary to understand the issues are as follows: In the year 1922 the plaintiff farmed the northwest quarter of section 2, in township 141, north of range 78 in Burleigh county, North Dakota, under a lease thereof to him by the owner of the land. He testifies he started to disc the land for the spring crop the 12th day of April, 1922. He planted about twenty-six acres of said land to rye and eighty-six acres to wheat. Plaintiff did not live on the land in question but did live on land cornering it in the adjoining township. After completing the seeding on the land in question he returned to his home farm in the adjoining township and was working his home farm until after the 10th of May, 1922. A hailstorm occurring July 14, 1922, caused a total loss to the crop. The plaintiff made no inquiry of the assessor of

said township, nor of the county auditor of said county, nor of anyone else, prior to the loss by hail, to ascertain whether or not his crops had been listed for state hail insurance. The defendant Nelson was the assessor of Cromwell township for the year 1922 and had resided in that township for a period of seventeen years. He commenced his duties of assessing the property in said township April 30th and returned the books of assessment to the county auditor's office May 14, 1922. He assessed the land in question on or about the 10th day of May, went by it on the north and west sides; had been on the land many times previous thereto; he judged there were about fifty acres tillable land and says there was no crop in at that time nor was there any indication of any crop being put in on the land. He further testified that he knew who the owner of the land was, did not know where he lived, knew he did not live in that vicinity, inquired of Henry Strum, residing on an adjoining farm, as to whether or not the land was rented and who had rented the same and was informed by said Strum that he, Strum, didn't know who had it rented. After making this investigation and viewing the land he made his return that none of said land was cropped and no crops were by his return listed for state hail insurance.

On or about the 9th day of August, 1922, plaintiff presented his claim for damages to the commissioner of insurance and the state bonding fund, demanded payment thereof and payment was refused. The defendant, Nelson, was bonded in the sum of $1,000 in the state bonding fund of the state of North Dakota.

The theory of the plaintiff is that under §§ 9 to 11 of chapter 77 of Session Laws of 1921 it became the duty of the defendant as assessor to certify the number of acres cropped by plaintiff with a description of the land and to file the same with the county auditor; that the plaintiff relied on the said assessor so to list his land for state hail insurance and consequently did not himself take the precaution to have his said land listed for said state hail insurance; that the assessor did not perform his duty, was negligent and did not use due diligence in that behalf and that by reason thereof the plaintiff suffered damage.

No service of process was had upon the defendant, Nelson, the state bonding department having answered, the suit was maintained against said bonding department. The case was tried to the court without a

jury, the parties having waived a jury. The trial court found for the defendants, dismissing the action, and judgment for the defendants was duly entered. Thereafter plaintiff made motion for a new trial which was denied. This appeal is prosecuted from the judgment and order denying a new trial.

The plaintiff assigns as errors the finding of the court in favor of the defendants; the entry of judgment thereon dismissing the action and the refusal of the court to grant a new trial, asserting that the evidence is insufficient to justify the finding of the Court in favor of the defendants and alleging its sufficiency to support a judgment in favor of the plaintiff.

These assignments of error raise the question of the legal liability of the assessor under the provisions of chapter 77, Session Laws of 1921, to respond in damages for his failure and neglect to discover and to list crops for hail insurance.

Section 9 of the act reads:

"It shall be the duty of every county and township assessor in his respective district at the time of listing property for assessment to return the number of tillable acres in every tract, parcel or subdivision of land, subject to taxation, together with the name of the person in whose name the land is taxed, and also the number of acres of such land, if any, in crop or to be sowed or planted to crop during such year. *He shall note upon a diagram on the crop listing blank the location of such land in crop or to be planted or sowed to crop during such year,* and shall return and file same with the county auditor of such county on or before the first day of June of each year."

Section 11 of the act reads as follows:

"*Every* owner or his agent or tenant or his agent of any land *subject to* the provision of this Act shall make an affidavit that the land so insured is actually cultivated and in crop or intended to be cultivated and put into crop. Such affidavit shall contain a legal description of the land together with the number of acres claimed as crop land and in case of any loss by hail such owner *and tenant* shall be bound by said affidavit as to the number of acres cropped. Such affidavit shall be made in *triplicate* and *shall* be sworn to before the assessor. *The assessor shall file the original and one duplicate of such affidavit with the County Auditor on or before the first day of June of each year, and a*

*copy of such affidavit shall constitute his policy of insurance.* If the owner or tenant or their agents be absent or refuses or neglects to furnish such affidavit, the assessor shall certify the number of acres cropped, the description of said land and the name of the owner, *and tenant,* if any, and file same with the County Auditor, and such owner and tenant shall be bound by such certificate as to the facts so certified. *Provided, that if any assessor shall neglect to list such land or shall list it improperly, any such owner or tenant or their agents may list such land with the county auditor prior to June 10th of any year by making affidavits as above provided. The originals of such affidavits to be filed by the county auditor with the hail insurance department immediately."*

The Act of 1921 amends and re-enacts chapter 160 Session Laws of 1919 as amended by chapter 38 of the special session of 1919. The italicized words show the additions to and departures from the Statute of 1919. It in no way enlarges the duties of the assessor as to listing crops for state hail insurance. It however clarifies such duties and makes more specific the method in which those duties are to be performed, while § 11 provides a method by which the owner or tenant or the agent or either may list for hail insurance such crops as the assessor may have failed or neglected to list.

The Act of 1919 was before this court for consideration in the case of Bossen v. Olsness, 48 N. D. 68, 182 N. W. 1013, wherein it was held that land sown to crops is not automatically insured against loss by hail under said act without classification and certification by the assessor or the owner.

Under the Act of 1921, as under the Act of 1919, the duty devolving upon the assessor to adjudge and determine the number of acres of the land assessed, if any, in crops or to be sowed or planted to crop during each year, does not become operative if the owner or his agent or tenant shall make the affidavit provided for in § 11 of the act. Upon the making of such affidavit the assessor has no duty to perform with reference to determining the number of acres of the land in crop or to be sowed or planted to crop, but required merely to file the original and one duplicate of such affidavit with the County Auditor on or before the first day of June of each year, and leave a copy of such affidavit with the maker, which shall constitute his policy of insurance. Thus,

" the primary duty of returning the statement of cultivated acreage devolves upon the owner. The assessor cannot exercise any discretion or independent judgment when the owner complies with the law and makes a return." Bossen v. Olsness, supra.

The affidavit required by this section was not made by either the owner, tenant or agent. The record further shows the owner of the land in question was not a resident of this state and that plaintiff as tenant resided in the adjoining township and was, at the time this land was assessed, absent therefrom. Thereupon it became the duty of the assessor to exercise his independent judgment and to determine for himself the number of acres cropped, if any, and to certify the fact, with the other necessary information, to the county auditor as a basis for the state hail insurance upon the crops, if any, sown or planted on said land. This duty he performed. He did determine upon investigation and view of the premises that there was no portion of said land cropped, and so certified to the county auditor. This duty so imposed by the statute upon the assessor is not wholly ministerial. It requires the exercise of some discretion and judgment by the assessor, arrived at after an investigation and view of the premises.

There is no contention by the pleadings, nor does it appear upon the record that in making such finding, determination and certificate the assessor acted fraudulently, corruptly, maliciously or in bad faith. Wilson v. Spencer, 91 Neb. 169, 135 N. W. 546.

Under these circumstances the assessor, acting within the scope of his authority as defined by said statute, cannot be held liable to persons who may be injured as the result of the honest exercise of his judgment and determination, however erroneous his judgment may be. 22 R. C. L. 485; 26 R. C. L. 467; Wilson v. Spencer, supra; Keifer v. Smith, 103 Neb. 675, 173 N. W. 685; Roerig v. Houghton, 144 Minn. 231, 175 N. W. 542.

The Statute of 1921, however, provides a simple and ready remedy whereby any error, mistake or neglect of the assessor in the listing of land for said hail insurance may be cured by the owner or tenant or their agent, by making affidavits as in the act provided and filing the same with the county auditor on or before June 10th of each year, and clearly manifests the intention of the legislature to make it the primary duty of the owner or tenant of the land to list his crop for hail insur-

ance. Having failed to perform this duty and having failed and neglected to adopt the remedy provided by the law for his protection, he is not now in a position to complain of a condition the remedy for which was readily accessible to him. For these reasons the judgment of the district court is affirmed with costs to the defendant.

BRONSON, Ch. J., and CHRISTIANSON, BIRDZELL, and NUESSLE, JJ., concur.

Mr. Justice JOHNSON, disqualified, did not participate. Honorable THOS. H. PUGH, Judge of the Sixth Judicial District, sitting in his stead.