B. L. SCHMITZ, Appellant and Respondent, v. S. A. OLSNESS, Commissioner of Insurance in and for the State of North Dakota, Respondent and Appellant.

(Cross Appeals)

(226 N. W. 629.)

Opinion filed August 19, 1929.

*Jacobsen & Murray,* for appellant-respondent.

*James Morris,* Attorney General, and *Charles Simon,* Assistant Attorney General, for respondent-appellant.

CHRISTIANSON, J. This controversy involves certain claims against the state hail insurance department for injury to growing crops by hail in 1926. There is no question but that the crops in controversy were injured or destroyed by hail and that the owners are entitled to indemnity, provided the crops were covered by hail insurance. The defendant claims that the crops were not insured and that consequent-

ly there is no liability on the part of the state hail insurance department. The controversy involves a construction of certain provisions of the state hail insurance act.

The hail insurance department was established by the legislature in 1919 (Laws 1919, chap. 160). While the hail insurance act has subsequently been amended, in main, the department continues to function as originally established (1925 Supplement to the 1913 Compiled Laws of North Dakota, §§ 189b1–189b30). The legislature declared that the department was established "for the purpose of furnishing indemnity against damage to all growing crops by hail." Laws 1919, chap. 160, § 2. The department was placed under the management, control and supervision of the commissioner of insurance. Laws 1919, chap. 160, § 2. It was the intention of the legislature that "all crops grown or cultivated on land actually cropped" should be listed for insurance under the act. Laws 1919, chap. 160, §§ 5 and 2. To that end it was made the duty "of every county and township assessor in his respective district at the time of listing property for assessment, to return the number of tillable acres in every tract, parcel or subdivision of land, subject to taxation, together with the name of the person in whose name the land is taxed, and also the number of acres of such land, if any, in crop or to be sowed or planted to crop during such year." Laws 1919, chap. 160, § 9; 1925 Supp. § 189b9.

The law in force in 1926 provided:

"Every owner or his agent or tenant or his agent of any land subject to the provisions of this act shall make an affidavit that the land so insured is actually cultivated and in crop or intended to be cultivated and put into crop. Such affidavit shall contain a legal description of the land together with the number of acres claimed as crop land and in case of any loss by hail such owner or tenant shall be bound by said affidavit as to the number of acres cropped. Such affidavit shall be made in triplicate and shall be sworn to before the assessor. The assessor shall file the original and one duplicate of such affidavit with the county auditor on or before the first day of June of each year, and a copy of such affidavit shall be left with the maker and shall constitute his policy of insurance. If the owner or tenant or their agents be absent or refuses or neglects to furnish such affidavit, the assessor shall certify the number of acres cropped, the descrip-

tion of said land and the name of the owner, and tenant, if any, and file same with the county auditor, and such owner and tenant shall be bound by such certificate as to the facts so certified. Provided, that if any assessor shall neglect to list such land or shall list it improperly, any such owner or tenant or their agents may list such land with the county auditor prior to June 10th of any year by making affidavits as above provided. The originals of such affidavits to be filed by the county auditor with the hail insurance department immediately. An assessor who shall neglect or fail to list any land in the township or district in which he is assessor, as provided in this section, shall be guilty of a misdemeanor. Provided, that the hail insurance department shall be liable for loss only on lands listed as provided in this act." (1925 Supp. § 189b11.)

It further provided that "any owner of land liable for hail indemnity tax may at any time prior to the 15th day of June in each year withdraw any portion or all land owned by such person from the levy of said indemnity tax upon making an affidavit in duplicate" and filing it with the county auditor. 1925 Supp. § 189b12. It further provided that such "withdrawal from hail indemnity tax may be cancelled and the insurance reinstated any time prior to July 5th by filing an affidavit of application for such reinstatement. . . ." 1925 Supp. § 189b12. It also provided that each county auditor "shall file and keep one copy of the crop-listing affidavit presented to him by the assessor and shall forward the originals thereof on or before the 10th day of June each year to the commissioner of insurance at Bismarck" (1925 Supp. § 189b13) ; and that "the maximum amount of indemnity for total loss shall be $7 per acre except where the owner, occupant or tenant shall, prior to the 5th day of July of any year, make application to the county auditor for an additional $3 per acre indemnity." 1925 Supp. § 189b15.

This case involves four different classes or kinds of crop-listing affidavits:—

1. In the first class, the owners or tenants made crop-listing affidavits and swore to them before the assessors of the districts in which the lands were situated on June 10th, 1926 and the affidavits were filed with the county auditor on that same day.

2. In the second class, the owners or tenants made crop-listing affi-

davits and swore to them before the assessors of the districts in which the lands were situated on June 10, 1926 and the assessors thereafter filed the affidavits with the county auditor; but there is a conflict between the parties as to whether the affidavits were filed on June 10, 1926.

3. In the third class, the owners or tenants made and filed crop-listing affidavits on or subsequent to June 11th and 12th.

4. In the fourth class, the tenant swore to a crop-listing affidavit in May and the affidavit was duly filed with the county auditor; but the affidavit was to the effect that no portion of the land was cropped or to be cropped that year; and it is claimed that the assessor, in preparing such affidavit, made a mistake and placed the acreage cropped or to be cropped in the column headed "tillable land not cropped" instead of placing the same in the column headed "number acres cropped or to be cropped this season."

The trial court held that crop-listing affidavits of the first class resulted in valid contracts of insurance and that consequently the hail insurance department was liable for hail losses sustained upon lands covered by such affidavits; but that the crop-listing affidavits of the second, third and fourth classes created no liability whatever on the part of the hail insurance department. Both parties have appealed from the decision adverse to them.

The first and primary question to be determined is whether a crop-listing affidavit made and filed with the county auditor on June 10th is timely.

It is the contention of the defendant that under the provisions of section 189b11, supra, it was incumbent upon the owners or tenants to prepare and file such affidavits with the county auditor not later than June 9th. In other words, it is the contention of the defendant that inasmuch as the act provides that the owner or tenant or their agents may list any land (which the assessor has failed to list or has listed improperly) by "making and filing a crop-listing affidavit with the county auditor prior to June 10th," that an affidavit made and filed on June 10th is too late; that the county auditor had no authority to accept and file such affidavit and that the filing of such affidavit on June 10th brought into being no contract of insurance and placed no liability upon the hail insurance department.

After careful consideration of all the provisions of the hail insurance act we have reached the conclusion that a crop-listing affidavit filed with the county auditor on June 10th is filed within the time authorized by the law.

The hail insurance act was intended to furnish insurance, that is, to afford indemnity, against damage by hail to cultivated crops; but the law does not apply automatically. Bossen v. Olsness, 48 N. D. 68, 182 N. W. 1013. Even where the lands have been listed as prescribed by the law the owner of the land may withdraw the same from the operation of the hail insurance act (§ 189b12); and if the assessor fails to list the land or lists the same improperly, the owner or tenant, by making and filing the proper affidavit, may obtain the insurance afforded by the act. § 189b11.

The hail insurance act in common with most statutory enactments,—especially those relating to administrative matters,—contains certain provisions that are mandatory and prohibitory and others that are merely directory. This is true also as to the dates specified therein for the performance of acts. Thus, § 5 of the act (§ 189b5, supra) which provides that (except for fall and winter grain) "no indemnity shall be allowed . . . for loss that occurs after the 15th day of September of any year, nor for loss occurring prior to June 10th of each year," is doubtless a restriction upon the power to contract; and the hail insurance department would be without authority to contract to pay losses occurring either before or after the prescribed dates. But the provision in § 9 of the act (§ 189b9, supra) that the assessor shall file the crop-listing affidavits with the county auditor "on or before the first day of June of each year", while mandatory in the sense that it prescribes a rule for the assessor, is nevertheless, we think, merely directory in so far as it affects the validity of hail insurance effected through his acts. And upon the oral argument it was admitted that this has been the construction placed upon it by the hail insurance department. In other words, the hail insurance department has recognized as legal and valid all hail insurance effected by an assessor after June 1st, but prior to and including June 9th.

It is a general rule under our law that in computing the time in which any act provided by law is to be done the day on which the event is to occur is included. Comp. Laws 1913, § 7324; Coe v.

Caledonia & M. R. Co. 27 Minn. 197, 6 N. W. 621. The term "prior to" is used several times in the hail insurance act; thus, in § 5 of the act it is provided that "no indemnity shall be allowed . . . for loss occurring prior to June 10th of each year." Obviously this section contemplates that losses occurring on that day shall be compensable under the act. Section 12 of the act (§ 189b12, supra), which authorizes the withdrawal of lands from the hail indemnity tax, provides that "the withdrawal from hail indemnity tax may be cancelled and the insurance reinstated at any time prior to July 5th by filing an affidavit of application for such reinstatement." And § 15 (§ 189b15, supra) provides that "the maximum amount of indemnity for total loss shall be $7 per acre except where the owner, occupant or tenant shall, prior to the 5th day of July of any year, make application to the county auditor for an additional $3 per acre indemnity." These two latter provisions were construed by this court in Freisz v. Olsness, 51 N. D. 210, 199 N. W. 590, and it was there held that an affidavit for reinstatement under § 12 of the act and an application for additional indemnity under § 15 of the act were timely if filed on July 5th. We are of the opinion that the rule announced in Freisz v. Olsness, supra, is applicable to crop-listing affidavits filed under § 11 of the act. In short, we are of the opinion that the legislature intended that where the assessor neglects to list lands or lists the same improperly, the owner or tenant may list the same at any time up to and including the 10th day of June. It follows therefore that the trial court was correct in holding that the claims based upon crop-listing affidavits which were concededly sworn to before the assessor and filed with the county auditor on June 10th constitute claims upon valid insurance policies against the hail department.

As regards claims based upon affidavits of the second class we are of the opinion that the trial court was in error in holding these claims to be invalid. These crop-listing affidavits were subscribed and sworn to before the assessor on June 10th, and the original and copy thereof were filed by the assessor with the county auditor. The county auditor testified that he would not swear positively whether these affidavits were filed on June 10th but that he believed they were so filed. The original affidavits are presumptively in the possession of the hail insurance department. These affidavits were not produced. The auditor

testified that it was not his custom to place a filing stamp upon the copies of the crop-listing affidavits in his office. The undisputed facts remain, however, that these affidavits were sworn to before the assessor on June 10th; that the assessor delivered them to the county auditor and the county auditor received them,—all in the usual course of official business. There is a legal presumption in this state that public officers regularly perform their duty. Comp. Laws 1913, subdv. 15, § 7936; Fisher v. Betts, 12 N. D. 197, 209, 96 N. W. 132. The affidavits were received by the county auditor and the originals transmitted to the hail insurance department. They were received and retained by the department and the lands listed by the state hail insurance department as being subject to the indemnity tax. The assessor was paid the statutory compensation for listing the lands; and after hail losses had occurred, adjusters of the department were sent out and adjustments made. There is no evidence that the affidavits were not filed on June 10th. There is merely the statement of the auditor that he cannot say positively that they were so filed. The evidence recited justifies, we think, only one conclusion, namely, that the assessor filed the affidavits with the county auditor on June 10th. It follows therefore that as to claims based upon crop-listing affidavits subscribed to by the owners or tenants on June 10th the plaintiff has established a prima facie, valid claim.

As regards claims based upon crop-listing affidavits of the third class, the ruling of the trial court does not seem to be seriously challenged. There is little or no argument in support of these claims and any assignment of error predicated upon the denial of such claims may well be deemed to be waived by reason of the failure to support the same by argument. We are inclined to the view, however, that the trial court was correct in holding that these crop-listing affidavits were not timely, and that the claims based thereon did not constitute valid claims against the hail insurance department.

We are also agreed that the trial court was correct in holding that there was no liability on the part of the hail insurance department for the claims based upon the crop-listing affidavit in which the relator claims the land to be cropped was mis-described. The statute expressly provides that in case of any loss by hail the owner and tenant "shall be bound" by the crop-listing affidavit "as to the number of acres cropped."

612

(§ 189b11, supra) ; and that in case of conflict between the "diagram on the crop-listing blank" and the recitals in the crop-listing affidavits as regards the number of acres in crop, "the number of acres as given in the cropped land column shall govern" (§ 189b9, supra). In this case there is no conflict. The crop-listing affidavit shows that no part of the land is cropped or to be cropped during 1926 ; and the diagram, or plat, on the crop-listing affidavit is to the same effect. The insured was furnished a copy of the crop-listing affidavit. This was his policy of insurance. (§ 189b11, supra). If the land was improperly listed therein his remedy was to file an affidavit, under § 11 of the act (§ 189b11, supra), correctly listing the land. Bossen v. Olsness, 48 N. D. 68, 182 N. W. 1013. This he failed to do; consequently, no insurance was effected and there is no liability on the part of the state hail insurance department.

It follows therefore that the decision of the trial court in so far as it awarded compensation for the claims in class one and denied compensation for the claims in classes three and four was correct and it is affirmed; and that such decision in so far as it denied compensation for claims in class two is erroneous and must be reversed. It is so ordered.

BURKE, Ch. J., and NUESSLE, BURR, and BIRDZELL, JJ., concur.