F. M. DAVIS, as Receiver for the First National Bank of Turtle Lake, North Dakota, a Corporation, Appellant, v. THE COUNTY OF McLEAN, IN THE STATE OF NORTH DAKOTA, a Public Corporation, Respondent.

(204 N. W. 459.)

**Taxation — indemnity hail tax held not to create lien paramount to antecedent real estate mortgage.**

The Indemnity Hail Tax provided by chapter 77, Laws 1921 is not a tax

within the purview of the Constitution of this state; and such "indemnity tax" does not create a lien paramount to an antecedent real estate mortgage.

Opinion filed February 21, 1925.   Rehearing denied June 17, 1925.

Constitutional Law, 12 C. J. § 212 p. 780 n. 98.   Taxation, 37 Cyc. p. 1145 n. 37.

Appeal from the Distirct Court of McLean County, *Jansonius,* J.

Plaintiff appeals from an order sustaining a demurrer to the complaint.

Reversed.

*C. L. Foster* and *A. G. Divet,* for appellant.

Taxes are generally defined as burdens or charges imposed by legislative authority on persons or property to raise money for public purposes, or more briefly, an imposition for the supply of the public treasury.   Hanson v. Franklin, 19 N. D. 263.

A tax is an enforced proportional contribution of persons and property, levied by authority of the state for the support of the government, and for all public needs.   Strand v. Marin, 30 N. D. 165, 152 N. W. 260.

Taxes are defined to be burdens or charges imposed by the legislative power upon persons or property to raise money for public purposes.   Cooley, Const. Lim. 7th ed. p. 678.

But the voice of the legislature cannot alter the essential nature of things.   No legislative fiat can make that a tax which is not and cannot be a tax.   Yeastman v. King, 2 N. D. 422.

The loan by the public supplanting the first lien upon real property might be so great as to work a destruction of the lien supplanted, but it is sufficient to condemn a law that it works any impairment, however slight, of the obligations of a contract.   To affect a dollar of a prior lien by subsequent legislation is as vicious before the law as to destroy the lien altogether.   State v. Nelson, 1 N. D. 88; Strand v. Marin, 30 N. D. 165; Walker v. Whitehead, 16 Wall. 314.

There is no magic in the language, though used by constitutional convention, which can change a private business into a public one or alter the character of the building in which the business is transacted. Munn Case, 94 U. S. 113.

The constitution of a state is undoubtedly a law within the meaning of this prohibition. A state can no more do what is thus forbidden by one than the other. There is the same impediment in the way of both. Mississippi, etc. R. Co. v. McClure, 129 U. S. 36, 32 L. ed. 589.

A constitutional provision and statute of a state which increases the amount of property which is exempt from execution are, as to judgments previously recovered, void, because they diminish the value of the property impliedly pledged. Gunn v. Barry, 15 Wall. 610, 21 L. ed. 212; Bank v. Clement, 256 U. S. 126, 65 L. ed. 857.

The test of the impairment of a contract is whether its value has been diminished to any extent. It is not to be impaired at all. Planters' Bank v. Sharp, 6 How. 301, 327.

The rule is well established in this jurisdiction that a tax upon real estate which is attempted to be assessed without permitting the taxpayer to be heard before the legally designated tribunal, is a void tax. Picton v. Fargo, 10 N. D. 469.

*George P. Gibson* and *J. A. Hyland,* for respondent.

A state tax law, where conflict with Federal power is not involved, will be held to conflict with the 14th Amendment to the Federal Constitution, only where it proposes or clearly results in such flagrant and palpable inequality between the burden imposed and the benefit received as to amount to the arbitrary taking of property without compensation. Dane v. Jackson, 65 L. ed. 1107, 41 Sup. Ct. Rep. 566.

The contract inherent in the charter, as distinguished from property acquired under the charter, was subject to the states power to amend or repeal. Sears v. Akron, 246 U. S. 242, 62 L. ed. 688, 38 Sup. Ct. Rep. 245.

In the American constitutional system, the power to establish the ordinary regulations of police had been left with the individual states, and it cannot be taken from them either wholly or in part. Cooley, Const. Lim. 7th ed. p. 831.

A state may, when exercising its police power consider the relation of rights, and accommodate their co-existence, and in the interest of the community, limit one right that others may be enjoyed. Walls v. Midland Carbon Co. 254 U. S. 300, 65 L. ed. 276, 41 Sup. Ct. Rep. 118.

Contracts are made subject to this exercise of the power of the state when otherwise justified, as we have held this to be. Edgar Levy Leasing Co. v. Siegel, 258 U. S. 242, 66 L. ed. 595, 42 Sup. Ct. Rep. 282.

Private contract rights must yield to the public welfare where the latter is appropriately declared and defined and the two conflict. Union Trust Co. v. Georgia Pub. Serv. Corp. 247 U. S. 372, 63 L. ed. 309, 39 Sup. Ct. Rep. 117.

"Contracts must be understood as made in reference to the possible exercise of the rightful authority of the government, and no obligation of a contract can extend to the defeat of legitimate government authority." Louisville & N. R. Co. v. Mottley, 219 U. S. 467, 482, 55 L. ed. 297, 303, 34 L.R.A.(N.S.) 671, 31 Sup. Ct. Rep. 265 (quoted from Legal Tender Cases, 12 Wall. 457, 550, 551, 20 L. ed. 287, 311, 312.)

The word "contracts" in the United States Constitution, Article 1, Par. 10, forbidding a state to impair the obligation of contracts, is used in its usual and popular sense, as signifying an agreement of two or more minds to do or not to do certain acts. "Mutual assent" (express or implied) "to its terms is of its very essence." Crane v. Hahlo, 258 U. S. 142, 66 L. ed. 514, 42 Sup. Ct. Rep. 214.

A lien for a street assessment is, by necessary implication, given priority in rank to an existing mortgage on the property. Dressman v. Farmers & T. Nat. Bank, 100 Ky. 871, 36 L.R.A. 121, 26 S. W. 1052.

A law of a state having made water rents a charge on land, with a lien prior to all other encumbrances, in the same manner as taxes and assessments, a mortgage on the land is subject to this condition and charge whether the water was introduced on the lot mortgaged, before or after the giving of the mortgage. Provident Institution of Sav. v. Jersey, 113 U. S. 1103.

A statutory provision that the costs of improvements and repairs of a drainage system shall be assessed upon the lands in the drainage district in the same proportion that the original cost was assessed, is a legislative declaration that the lands will be benefited, and hence due process of law does not require a new notice and opportunity to

be heard before the work is determined upon or the assessment made. Breiholz v. Pocahontas Co. 257 U. S. 118, 66 L. ed. 159.

A local assessment for a street improvement according to the front-foot rule does not contravene the 14th Amendment to the Federal Constitution. Withnell v. Ruecking, 249 U. S. 63, 63 L. ed. 479, 39 Sup. Ct. Rep. 200.

CHRISTIANSON, Ch. J. This is an action to foreclose a real estate mortgage. McLean county is made a party defendant on the theory that it claims and holds certain liens on the mortgaged real estate subordinate to the lien of plaintiff's mortgage. The defendant county admits that it claims certain liens on the property by virtue of certain taxes, among which are certain Hail Indemnity Taxes; but it asserts that these liens are all prior and superior to the lien of plaintiff's mortgage.

The material and undisputed facts are as follows: Plaintiff's mortgage is dated September 28, 1915, and was duly recorded October 6th, 1915. Default having occurred in the conditions thereof, the mortgage was duly foreclosed by advertisement on June 28, 1921. The plaintiff became the purchaser at such sale. No redemption was made, and on July 10, 1922, the sheriff of said McLean county executed and delivered to the plaintiff a sheriff's deed to said premises in form and substance as provided by the laws of this state, and the plaintiff thereupon entered into possession of the premises. Certain portions of the premises were cropped during the years 1920, 1921 and 1922; and during those years the crops thereon were insured, against loss by hail, in the State Hail Insurance Department, and what is commonly known as an indemnity hail tax was assessed against said lands on account of such insurance. The various taxes, including the indemnity hail tax, were not paid, and the land was sold at tax sale for the amounts due for such taxes for the years 1920 and 1921. At such tax sales the lands were bid in by the said county of McLean, in accordance with the provisions of § 2991, Comp. Laws, 1913. The taxes for 1922 became and are delinquent. McLean county is the holder of the liens existing by virtue of such taxes and tax sale certificates. The plaintiff admits that all general taxes, and the so-called "Flat (Hail) Tax" are valid tax liens, prior and superior to the lien

of plaintiff's mortgage; and he has duly tendered and deposited the full amount due on such tax liens, including all penalties and interest; but he denies that the "Indemnity Hail Tax" is a lien prior to such mortgage, and asserts that the liens created by the "Indemnity Hail Tax" are inferior and subsequent to the lien of plaintiff's mortgage. The county, on the other hand, contends that the indemnity hail tax stands on the same basis as other taxes against the premises, and that the lien or liens created by virtue thereof are liens superior to the lien of plaintiff's mortgage. This contention presents the sole question involved in the case. The trial court sustained the contention of the defendant county, and the plaintiff has appealed.

A determination of the question presented on this appeal involves a consideration of the various constitutional and statutory provisions of this state relating to State Hail Insurance.

At the general election in 1918 there was submitted to the people of this state, for approval or rejection, the following two proposed constitutional amendments, to-wit:

"The Legislative Assembly may by law provide for the levy of a tax upon such lands as may be provided by law of the State for the purpose of creating a fund to insure the owners of growing crops against losses by hail; provided, that such tax shall not affect the tax of four mills levied by the Constitution. The Legislative Assembly may classify such lands of the state as may be provided by law, and divide the State into districts on such basis as shall seem just and necessary and may vary the tax rate in such districts in accordance with the risk, in order to secure an equitable distribution of the burden of such tax among the owners of such land as may be provided by law." Amendments to N. D. Const. Art. 24; Laws 1917, chap. 93.

"The Legislature may by law provide for the levy and collection of an acreage tax on lands within the State in addition to the limitation specified in Section 174, in Article 11, of the Constitution. The proceeds of such tax shall be used to indemnify the owners of growing crops against damages by hail, provided that lands used exclusively for public roads, rights of way of common carriers, mining, manufacturing or pasturage, may be exempt from such tax." Amendments to N. D. Const. Art. 30; Laws 1919, chap. 85.

The first amendment originated in the legislature, and was submitted

to the people in accordance with § 202 of the Constitution. The second amendment was proposed by initiative petition filed in the office of the Secretary of State on May 3rd, 1918. Both amendments were submitted to the people for approval or rejection at the general election held November 5th, 1918. The first amendment received 52, 475 affirmative, and 30,257 negative, votes. The second amendment received 46,329 affirmative, and 33,572 negative, votes. No question is raised in this case as to the adoption of either amendment. In other words, the case has been brought and submitted on the theory that both, constitutional amendments were duly submitted to, and approved by, the people at the general election in 1918; and, hence, became, and now are, part of the Constitution of this State.

The State Hail Insurance Department was established by the Legislative Assembly in 1919. Laws 1919, chap. 160. The law establishing the State Hail Insurance Department was amended and re-enacted in 1921. Laws 1921, chap. 77. So far as the questions involved in this action are concerned, there is no material difference between the two laws, and, hence, only the provisions of the 1921 Act will be quoted.

The State Hail Insurance Department was placed under the control, management and supervision of the Commissioner of Insurance. Laws 1921, chap. 77, § 2.

The Act provides:

Section 5. "The crops insured under this Act shall consist of all crops grown on cultivated land listed as actually cropped, subject to and paying the taxes herein specified, provided that no loss shall be allowed or paid for damage to crops after they have been harvested, or that occur after the fifteenth day of September of any year, nor shall damages be paid on any crops prior to June tenth of each year, nor upon crops listed for insurance upon which an application for extension of time for withdrawal has been made as provided in § 12 of this Act during the time of such extension; provided that insurance on fall and winter grain shall take effect June 1st of each year.

Section 6. "There is hereby levied for the years 1921, 1922, 1923, 1924, 1925 upon each and every acre of tillable land in the State, a flat tax of three cents per annum for the purpose of carrying out the provisions of this Act, and creating a permanent surplus in the Hail

Insurance Fund to be applied in paying losses more promptly. Provided that lands used exclusively for public roads, rights of way of common carriers, mining or manufacturing purposes, and lands included within the platted portion of any incorporated city, town or village shall be exempt from such tax. All moneys collected under the provisions of this Section shall be paid into the State Hail Insurance Fund but a separate record of such moneys shall be kept by the County and State Treasurers.

Section 7. "The commissioner of insurance shall on or before the twenty-fifth day of October of each year ascertain the amount which is required for the total payment of all loss caused by hail to crops insured by the department and a sum sufficient to pay interest at the rate of six per cent on all warrants issued from the first day of December until called for payment by the State Treasurer plus a sufficient sum to maintain and operate the department for the succeeding year, and shall thereupon for the purpose of securing and paying the same levy an indemnity acreage tax sufficient to cover said amount on all cropped land insured (except hay and meadow land) not withdrawn from the operation of this Act as hereinafter specified, provided that the total amount of said indemnity tax shall not exceed in any one year the sum of fifty cents per acre for seven dollars indemnity or seventy-one cents per acre for Ten Dollars indemnity. Provided further that if the sum collected by the maximum levy should be insufficient to pay all losses in any one year, the payment of losses shall be prorated. All moneys collected under the provisions of this Section shall be paid into the State Hail Insurance Fund.

Section 8. "After the commissioner of insurance shall have determined and levied said indemnity acreage tax he shall forthwith notify the county auditor of each county of such levy, and the County Auditor shall spread such indemnity and flat tax on the tax rolls in separate columns for that purpose. Such indemnity taxes and flat acreage taxes shall be collected by the Treasurer of said county and shall be kept in a separate fund to be known as the State Hail Insurance Fund.

Section 9. "It shall be the duty of every county and township assessor in his respective district at the time of listing property for assessment to return the number of tillable acres in every tract, parcel or subdivision of land, subject to taxation together with the name of the

person in whose name the land is taxed and also the number of acres of such land, if any, in crop or to be sowed or planted to crop during such year. He shall note upon a diagram on the crop listing blank the location of such land in crop or to be planted or sowed to crop during such year, and shall return and file same with the county auditor of such county on or before the first day of June of each year. Such assessor in addition to the compensation allowed by law shall receive the sum of fifteen dollars for each full township of thirty-six sections or at the rate of seven cents per hundred acres or fraction thereof listed, whether tillable or not. Such compensation shall be paid out of the hail insurance fund on vouchers issued by the Commissioner of Insurance and approved by the state auditing board, provided that warrants in payment of such listing of land shall not be issued before the county auditor shall have filed with the Hail Insurance Department a certified statement that such assessor has listed every tract of land in his township or district.

Section 10. "All taxes provided for in this act shall become due and payable on the first day of December of each and every year for which the tax is levied, and shall become delinquent on the first day of March following, and if unpaid there shall attach thereto a penalty of 5 per cent as soon as the same become delinquent; also on the first day of June following an additional penalty of 2 per cent, on the first day of November following a further penalty of three per cent on original taxes, and the same shall be charged and collected accordingly without being specially entered or noted on the tax list, and shall be collected by the county treasurer of each county, provided, that all sums arising from the penalty and interest for nonpayment of such taxes as hereinbefore provided, shall accrue to and become a part of the State hail insurance fund. Provided, all laws relating to the collecting of penalty and interest, and sale of realty for nonpayment of taxes, shall apply to taxes accruing under this Act. And it is further provided that delinquent taxes that have been levied under the provisions of this Act shall be advertised and sold together with general real estate taxes in one sum and one certificate shall be issued therefor. It is further provided that it shall be the duty of the County Treasurer of each county in the State to remit to the State Treasurer all taxes collected under the provisions of this Act during each month on or

52 N. D.—55.

before the 15th day of the following month, and the State Treasurer shall upon the first day of each month, report to the commissioner of insurance the condition of the state hail insurance fund. Provided, further that the commissioner of insurance before paying any losses arising under this Act shall deduct from such payment the amount due the State from the person liable for payment of same under the provisions of this Act.

Section 11. "Every owner or his agent or tenant or his agent of any land subject to the provisions of this Act shall make an affidavit that the land so insured is actually cultivated and in crop or intended to be cultivated and put into crop. Such affidavit shall contain a legal description of the land together with the number of acres claimed as crop land and in case of any loss by hail such owner and tenant shall be bound by said affidavit as to the number of acres cropped. Such affidavit shall be made in triplicate and shall be sworn to before the assessor. The assessor shall file the original and one duplicate of such affidavit with the county auditor on or before the first day of June of each year, and a copy of such affidavit shall be left with the maker and shall constitute his policy of insurance. If the owner or tenant or their agents be absent or refuses or neglects to furnish such affidavit, the assessor shall certify the number of acres cropped, the description of said land and the name of the owner, and tenant, if any, and file same with the county auditor, and such owner and tenant shall be bound by such certificate as to the facts so certified. Provided, that if any assessor shall neglect to list such land or shall list it improperly, any such owner or tenant or their agents may list such land with the County Auditor prior to June 10th of any year by making affidavits as above provided. The originals of such affidavits to be filed by the county auditor with the hail insurance department immediately. Any assessor who shall neglect or fail to list any land in the township or district in which he is assessor, as provided in this section, shall be guilty of a misdemeanor. Provided, that the hail insurance department shall be liable for loss only on lands listed as provided in this Act.

Section 12. "Any owner of land liable for the indemnity tax herein provided for, may at any time prior to the 15th day of June in each year, withdraw any portion of all land owned by such person from

the levy of said indemnity tax upon making an affidavit in duplicate, giving the legal description of the land, the number of acres withdrawn and stating that he desires to withdraw therefrom, and filing such affidavit in duplicate with the county auditor, and the county auditor shall, within three days file a copy of same with the 'commissioner of insurance, and the party making withdrawal shall note upon his crop listing affidavit the number of acres and the legal description of land so withdrawn 'and shall note upon a diagram upon such withdrawal affidavit the location of land so withdrawn. Such affidavit shall be sworn to before any notary public or county auditor or a qualified justice of the peace. Provided, that no assessor shall acknowledge any affidavit of withdrawal. Provided, further that it shall be the duty of the Hail Insurance Department to furnish each county auditor for distribution by the assessors all withdrawal blanks, crop listing blanks, extension application blanks and loss report blanks together with self-addressed envelopes necessary in their respective townships. Should such owner wish to withdraw all his land subject to indemnity tax then he shall surrender also the crop listing affidavit and file same together with the application for withdrawal with the county auditor. Provided, that in case said land or any portion thereof is rented such owner shall first procure the written consent of such tenant for any withdrawal authorized by this Act, such consent to be filed with the county auditor, together with the owner's application for withdrawal. Provided, that the owner shall have a self-executing first lien upon all crops 'and grain belonging to the tenant grown upon the land as security for the payment of said tax or the part of such tax properly chargeable against the tenant's share of such crop or grain. The owner shall also have a first lien chargeable against tenant's share of hail indemnity if filed with the Commissioner of Insurance prior to October 1st. Provided, further, that any owner may secure an extension of the time for such withdrawal up to the first day of July of any year by filing with the county auditor prior to June 15th of any year an 'application in duplicate, asking that such extension be granted. Such application to contain a clause relieving the hail insurance department from all liability for payment of indemnity during time of such extension but such application may be cancelled 'at any

time prior to July 1st. Such application to be sworn to and signed by the applicant before an officer authorized to administer oaths.

Section 13. "Each county auditor shall file and keep one copy of the crop affidavits presented to him by the assessors and shall forward the originals thereof on or before the 10th day of June of each year to the commissioner of insurance at Bismarck. Prior to July 15th of each year the county auditor shall file a tabulated statement showing the total number of acres classified as tillable land and cropped in his county. Each county shall receive the sum of 50 cents per each 1000 acres of tillable area to be paid out of the hail insurance fund prior to December 31st, of each year on vouchers issued by the commissioner of insurance and approved by the state auditing board. Provided, that any county where the Auditor shall fail or neglect to make returns, statements and reports to the commissioner of insurance at the time specified in this Act, shall forfeit the sum of $10.00 per day during the time such county auditor neglects to make such returns, statements or reports, and the Commissioner of Insurance is hereby authorized to deduct the amount of such fine to the extent of such compensation above provided for to any county. Provided, further it shall be the duty of the attorney general to proceed to collect the amount of such penalty for the time of such delinquency in excess of the amount above provided for."

Section 15. "The maximum amount of indemnity for total loss shall be $7.00 per acre except where the owner, occupant or tenant shall, prior to the 1st day of July of any year, make application to the county auditor for an additional $3.00 per acre indemnity. Such application shall be made out in duplicate upon blanks furnished by the hail insurance department and one of these copies shall be forwarded to the hail insurance department within three days after it is filed. Such application shall contain the legal description of the land and the location of the crops upon such land noted upon the diagram on the application on which additional insurance is desired, and that such crop has not been destroyed or damaged by hail. Such application shall be sworn to before some one authorized to administer oaths and be signed by the applicant.

If the applicant is a tenant the signed consent of the person liable for the taxes authorized by this Act must appear upon such applica-

tion, and if owner makes such application the signed consent of the tenant, if any, must appear upon such application. Provided, that no indemnity shall be allowed to any claimant for the loss of less than ten per cent and a loss of eighty-five per cent or more, shall be deemed a total loss. There shall be no claim allowed for any loss or damage by hail to crops described in this Act, except for such portion as is traceable to hail."

The taxes involved in this case were levied under § 7 of the Act. The plaintiff contends that such taxes are liens subordinate and inferior to the lien of plaintiff's mortgage; that the two amendments to the Constitution relating to state hail insurance, and the legislative enactment establishing the state hail insurance department insofar as they authorize or provide for the levying of the so-called indemnity hail tax are, as against the plaintiff—(who is the holder of a prior mortgage upon the premises sought to be made subject to such tax)—, violative of § 10 of article 1 of the Constitution of the United States, which provides: "No state shall . . . pass any . . . law impairing the obligation of contracts;" and of the due and equal protection of the law clauses of the 14th amendment of the Constitution of the United States.

In our opinion the case does not present any question of conflict between the two amendments of the State Constitution and the Constitution of the United States; for the Hail Indemnity Tax, authorized by § 7, supra, is not a tax within the contemplation of either of the amendments to the State Constitution.

The first amendment authorizes the legislative assembly to provide by law "for the levy of a tax upon such lands as may be provided by law of the State for the purpose of creating a fund to insure the owners of growing crops against losses by hail."

The second amendment provides that "the legislature may by law provide for the levy and collection of an acreage tax on lands within the state," the proceeds of which "tax shall be used to indemnify the owners of growing crops against damages by hail."

We need not consider in what respects the two amendments differ from each other. So far as the question here is concerned there is no essential difference. Both amendments provide for the levy of a *tax*. Both contemplate that the legislature, by law, shall designate the lands

to be taxed. Both involve the taxing power, and in the clearest terms indicate that the power must be exercised by the legislature itself. Neither amendment purports to authorize the legislature to create any lien or charge upon lands in this state, except such as may result from the levy of a tax.

The power of taxation is an inherent incident of sovereignty. 26 R. C. L. p. 26; 11 Enc. U. S. Sup. Ct. Rep. p. 274. Taxes do not rest upon contract, express or implied. "They are forced contributions, and in no way dependent upon the will or contract, express or implied, of the persons taxed." 26 R. C. L. 26; Rochester v. Bloss, 185 N. Y. 42, 47, 48, 6 L.R.A.(N.S.) 694, 77 N. E. 794, 7 Ann. Cas. 15; Gray, Limitations of Taxing Power, § 41. In his work on taxation Judge Cooley said: "Taxes are not contracts between party and party, either express or implied, but they are the positive acts of the government, through its various agents, binding upon the inhabitants, and to the making and enforcing of which their personal consent individually is not required." 1 Cooley, Taxn. 3d ed. p. 19. The power to tax belongs exclusively to the legislative branch of the government (11 Enc. U. S. Sup. Ct. Rep. p. 375; 26 R. C. L. p. 27; 1 Cooley, Taxn. 3d ed. pp. 43, et seq; Gray, Limitations of Taxing Power, §§ 533, 534; Vallelly v. Park Comrs. 16 N. D. 25, 15 L.R.A.(N.S.) 61, 111 N. W. 615, and cannot be delegated except to municipal corporations for municipal purposes. 26 R. C. L. p. 30; 1 Cooley, Taxn. 3d ed. pp. 99, 100; Gray, Limitations of Taxing Power, § 534; Vallelly v. Park Comrs. supra.

"It is a general rule of constitutional law that a sovereign power conferred by the people upon any one branch or department of the government is not to be delegated by that branch or department to any other. This is a principle which pervades our whole political system, and, when properly understood, admits of no exception. And it is applicable with peculiar force to the case of taxation. The power to tax is a legislative power; and within that power lies the authority to prescribe the rules of taxation, and to regulate the manner in which those rules shall be given effect. The people have not authorized this department to relieve itself of the responsibility by a substitution of other agencies. . . . There is nevertheless one clearly defined exception to the rule that the legislature shall not delegate any portion of

its authority. The exception, however, is strictly in harmony with the general features of our political system, and it rests upon an implication of popular assent which is conclusive. This exception relates to the case of municipal corporations." 1 Cooley, Taxn. 3d ed. pp. 99–101. But the power to levy taxes—even for municipal purposes—may in no event be delegated to private individuals. Morton v. Holes, 17 N. D. 154, 115 N. W. 256.

The indemnity hail tax is not an enforced or compulsory contribution levied by the state by virtue of its sovereignty. It does not owe its existence to any "positive act of the government." According to the statute, land may be rendered subject to the indemnity tax in three ways: (1) Where it is listed by the assessor, and not withdrawn by the owner (§§ 9–12); (2) Where, (the assessor having failed to list it) it is listed by the "owner or tenant, or their agents" (§ 11); and, (3) Where the "owner, occupant or tenant" makes application for an additional indemnity of $3.00 per acre. § 15. Whether any tract of land is or is not subject to such tax depends upon the facts in each individual case. Unless the land is listed there is no indemnity against loss by hail and no liability for indemnity tax. Bossen v. Olsness, 48 N. D. 68, 182 N. W. 1013. Every tract of land in the state may be withdrawn from the operation of the act and relieved from the indemnity tax. And no tract becomes subject to the tax unless the owner thereof (or if the tract is leased the owner and the tenant) impliedly consents that it may become subject thereto. The Hail Insurance Act does not apply automatically either so as to insure all growing crops, or to render all tracts of land on which crops are grown subject to the indemnity tax. Ibid. But "it is the primary duty of the owner of land or the tenant, or the agent of either, in order to effect state hail insurance upon the crops grown upon such land, to make the affidavit or affidavits provided for in § 11." Brown v. Nelson, 50 N. D. 589, 197 N. W. 223.

In other words, neither the right to indemnity for loss by hail nor liability for indemnity tax arises solely by operation of the legislative will as expressed in the law. On the one hand there is no right to indemnity for a hail loss unless and until such action is taken in each individual case as will impose liability upon the state hail insurance department under the terms of the statute. On the other hand, there is

no liability for indemnity tax—and no tract of land becomes subject thereto—unless there is an implied consent by the owner (or by the owner and the tenant) that such tax may be levied against the particular tract of land. In every case it is within the power of some private individual or individuals to determine whether the indemnity tax shall or shall not be levied against a particular tract of land. The indemnity tax rests, in each instance, not upon the legislative will, but upon the will of private individuals. This is true as regards every tract of land within the state. If in any one year the owners of all the lands in this state and their tenants should elect to withdraw the lands from the operation of the hail insurance act, by filing proper affidavits of withdrawal, not one cent of indemnity tax would be levied. It seems too clear for controversy that the indemnity tax is not a tax within the well settled and fundamental meaning of that term. It does not rest upon some positive act of the government, but upon the consent of certain private individuals. In short, the indemnity tax is devoid of the fundamental attributes of a tax. And in our opinion it falls squarely within the rule announced by this court in Yeatman v. King, 2 N. D. 421, 33 Am. St. Rep. 797, 51 N. W. 721. That case involved a so-called tax levied under a statute authorizing the county to furnish seed grain to certain individuals upon application therefor. There, as here, the contest arose between the holder of a real estate mortgage upon the premises,—a mortgage in existence at the time the said grain was furnished and the tax or lien in favor of the county came into existence. There, as here, the county asserted that its lien, although subsequent in point of time, was by virtue of the statute prior to the lien of plaintiff's mortgage. The statute involved in that case provided that if the indebtedness due to the county for the seed grain furnished should not be paid on the 1st of November following, the amount of such indebtedness should be entered upon the tax list of the county for the ensuing year, "as a tax upon the land upon which such seed wheat was sown, to be collected as other taxes are; and the sum so entered and levied shall be a first lien . . . upon the real estate owned by such person, until the tax is fully paid."

In considering whether a lien for seed grain so furnished was in fact and in law a tax, and constituted a lien prior to an existing mortgage against the premises, this court said:

"The statute which makes the lien a first lien upon the land describes it as a tax lien, and the amount due for the seed grain is declared to be a tax, and the amount thereof, in case of default in its payment, is directed to be entered upon the tax list of the county. But the voice of the legislature cannot alter the essential nature of things. No legislative fiat can make that a tax which is not and cannot be a tax. If the law-making power were vested with unlimited authority to fix the meaning of words, to take cases without the prohibition of the constitution by arbitrary definitions, the fundamental rights of the citizen would be safe only so long as the legislature should abstain from defining away constitutional protections. Due process of law might be defined to embrace arbitrary confiscations; such a thing as an ex post facto statute might be defined practically out of existence; and many, if not all, of the barriers erected to shield the fundamental rights of the citizen from legislative assault—barriers seemingly of adamant, and apparently standing upon abiding foundations—would crumble before the breath of legislative definition. We are confident the agent has no power to define away the limitations upon his delegated authority. . . .

"Is, then, the obligation under the law resting upon the person who has received temporary county aid in the shape of seed grain, to repay to the county the value thereof, a tax in any sense of the word whatever? We are very clear that it is not. If the oracle be consulted we find it gives back no answer that will justify the theory that this obligation is a tax. Says Judge Cooley at the very threshold of his work on Taxation: 'Taxes are defined as being the enforced proportional contribution of persons and property, levied by authority of the state for the support of the government and for all public needs. The amount to be paid by him who has been supplied by the public with seed grain is not in any sense a "contribution," but it is a debt owing by him to the county for value received by him in the form of property. If it could be regarded as a contribution, it is not a proportionate contribution, for he who owes the duty to make this payment owes it in addition to his duty to pay his proportion of taxes, and he may be the only person in the county upon whom this extra obligation rests. Neither can it be said to be an "enforced" contribution. Whatever he is bound to pay is owing because of his voluntary purchase of seed

grain from the county. There is no coercion. He pays what he agrees to pay and no more.'

"If this obligation is a tax in a proper sense, then the state may give it a priority of lien. If not a tax, then the legislature cannot, by designating it as a tax, give it any greater preference as a lien than could be given it should no such name be affixed to it. To postpone a legal existing lien upon real property to a subsequent lien by a statute enacted subsequently to the attaching of such prior lien is to impair the obligation of a contract. This object cannot be accomplished by indirection—by calling something a tax which is not a tax. The legislature could not by an act passed after the plaintiff's mortgage had been executed and become a lien upon the property, confer upon any person who should loan or advance money or money's worth to the mortgagor a lien upon such property prior to that of the existing mortgage. Nor can the legislature lawfully give to a county or other public corporation or subdivision of the state any such priority in such a case unless the claim be for a tax, as a tax is known to the law. Neither can the state itself secure any such priority under such circumstances. When entering into contract relations with individuals, the state, or a municipal corporation thereof, is to be treated the same as an individual. It cannot call or charge up the amount of a loan as a tax, and by that device confer upon the loan all the qualities of a tax. If it could, and in this manner insert a lien for this pseudo tax ahead of existing liens, the holder of security upon real estate would be at the mercy of the state, despite the supreme law of the land preventing the impairing of the obligations of a contract by any state. If the state can make this claim a tax, then there is no limit to its power by definition to confiscate the securities of others. The amount advanced to the individual by the state would not affect the right of the state to call it a tax. Neither would the purpose for which the advance was made, nor the exigency to meet which the sum was loaned, limit in any manner the power of the legislature to invest such loan with all the attributes of a tax. The loan by the public supplanting the first lien upon real property might be so great as to work a destruction of the lien supplanted. But it is sufficient to condemn a law that it works any impairment, however slight, of the obligations of a contract. To affect a dollar of a prior lien by subsequent legislation is as vicious before

the law as to destroy the lien altogether. Walker v. Whitehead, 16 Wall. 314, 21 L. ed. 357."

This language and reasoning is equally applicable to the indemnity hail tax.

It follows from what has been said that the trial court was in error in holding that the indemnity tax created a lien prior to plaintiff's mortgage.

The order appealed from is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

NUESSLE, BURKE, JOHNSON, and BIRDZELL, JJ., concur.

On petition for rehearing.

PER CURIAM. Defendant has petitioned for a rehearing or a modification of the former opinion. We have again considered the question involved and determined therein, and are agreed that the views therein expressed should be adhered to. The mortgage involved in this action was executed, delivered and recorded before the law creating the State Hail Insurance Department was enacted. The precise question involved and determined in the case is whether a "Hail Indemnity Tax" levied under the hail insurance act creates a lien paramount to such antecedent mortgage. Obviously, it could create such lien only if the so-called "Hail Indemnity Tax" was actually a tax, within the legal meaning of that term. For reasons stated in the former opinion, we held that the "Hail Indemnity Tax" is not a tax within the purview of the Constitution of this State; and that, hence, "such indemnity tax does not create a lien paramount to an antecedent real estate mortgage." And after a careful review and reconsideration of the question we are wholly satisfied that both the conclusion reached in the former opinion, and the reasons given therefor are correct.

Rehearing denied.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, BURKE, and JOHNSON, JJ., concur.