STATE OF NORTH DAKOTA EX REL. T. J. HOLTER, Appellant, v. STATE OF NORTH DAKOTA, Doing Business as the State Hail Department, and S. A. Olsness, as Commissioner of Insurance of the State of North Dakota, Respondents.

(212 N. W. 513.)

**Insurance — lands subject to Hail Insurance Act.**

　　1. Under § 189b5, Supplement to the 1913 Compiled Laws, lands subject to.

Annotation.—(2) As to exemption of property of state from taxation, see 26 R. C. L. 331.

the State Hail Insurance Act consist of cultivated lands which are subject to the taxes or levies of the flat acreage tax and the indemnity levy. ·

**Constitutional provisions — taxation.**

2. Under § 176 of the state Constitution, property of the state is exempt from taxation.

**Insurance — when growing crops are removed from benefits.**

3. Where the ownership of cultivated lands passes to the state before the expiration of the period within which there may be a withdrawal of the lands from the benefits of the State Hail Insurance Fund, the crops growing thereon are removed from the benefits of the State Hail Insurance Fund.

Opinion filed February 3, 1927.

Hail Insurance, 29 C. J. § 2 p. 205 n. 2.   Taxation, 37 Cyc. p. 873 n. 94.

Appeal from the District Court of Burleigh County, *Jansonius* J. Affirmed.

*F. E. McCurdy,* for appellant.

*Geo. F. Shafer,* Attorney General, and *John Thorpe,* Assistant Attorney General, for respondents.

BIRDZELL, Ch. J.   This is an appeal from an order entered in the district court of Burleigh county, sustaining a demurrer to a petition for a writ of mandamus.   The petition, aside from the formal allegations, states that on May 3, 1925, the state treasurer, as trustee for the state of North Dakota, obtained a sheriff's deed to a half section of land in Hettinger county; that thereafter the Bank of North Dakota, acting as agent of the state treasurer, as trustee, leased the land to the petitioner; that the petitioner made a crop listing affidavit whereby the crops growing upon the land in 1925 were insured in the state hail department; that thereafter there was a hail loss sustained which was adjusted at the sum of $1,371.65, of which sum the petitioner was the owner of three-fourths; that the adjustment was certified to the state hail insurance department but that the commissioner neglected and refused upon demand to certify the same to the state auditor and state treasurer and cause the same to be paid in the regular course of business; that the amount thereof has been due and unpaid since December 1, 1925.

It may be assumed from the facts stated in the petition that all steps

had been taken to effect insurance in the state hail insurance department and to adjust the same so as to create a liability in the fund for the indemnity had the land in question been owned by an individual rather than by the state or by the state treasurer as trustee for the state. The controversy arises wholly because of the ownership by the state under a title acquired on May 3rd. The only question for consideration is the applicability of the State Hail Insurance Act to lands acquired by the state before the insurance contract (see Davis v. McLean County, 52 N. D. 857, 204 N. W. 459) becomes absolute—that is, before the time for withdrawal has elapsed.

It is contended by the appellant that under the Hail Insurance Act the question of the ownership of the property is of no importance in determining the existence of insurance; that the emphasis in the act is upon the crops, and that the general terms of the law point to an intention to apply it broadly to the end that those who produce crops may be insured unless they affirmatively withdraw from the protection which the law would otherwise afford. Section 189b5, Supplement to the 1913 Compiled Laws, is referred to in this connection, wherein it is declared "the crops insured under this act shall consist of all crops grown on cultivated lands listed as actually cropped, subject to and paying the taxes herein specified. . . ." It is said that the lien for the hail indemnity is a lien upon the lands as against the state capable of being foreclosed by ordinary proceedings for the foreclosure of liens; that the land, therefore, being subject to the lien, the crop is insured according to the only test of insurability stated in the act.

In providing that the crops insured under the act should consist of those grown on cultivated lands listed as cropped, subject to and paying the taxes as specified in the law, there can be no doubt that the legislature had in mind both the flat acreage tax and the indemnity levy. In other words, the term "taxes" in that connection was not used with scrupulous regard to its legal meaning, the latter not being a tax. See Davis v. McLean County, supra. The appellant concedes that the liability of the fund was contingent upon an enforceable obligation for the indemnity levy, but as the legislature has used the term "taxes" with reference to the burdens authorized to be imposed in the act itself, it must have meant both the burden of the indemnity levy and the burden of the acreage tax. This is so obvious that any other con-

struction is impossible. Is the land in question, which passed into state ownership on May 3rd of the particular crop year, legally taxable for that year? We are of the opinion that it is not. Section 176 of the state Constitution expressly exempts the property of the state from taxation and we are of the opinion that by virtue of this constitutional provision the land in question became exempt before the insurance contract became absolute. State v. Burleigh County, ante, 1, 212 N. W. 217. As the law has made taxability the test of insurability, the crop was not insurable and insured at the time of the loss.

There is additional argument to the effect that another section of the Hail Insurance Act, by specifically providing for insurance on homestead and Indian lands (§ 189b25, Supplement to the 1913 Compiled Laws), makes manifest an intention that the law shall apply universally to all crops. Stated in another way, it is argued that the fact that insurance by application of crops growing upon homestead and Indian lands is provided for, while no similar provision is made for insuring crops growing upon lands of which the state may be the owner, is evidence that lands of the latter class were included in the general provisions of the act and required no special contract or application. We cannot attach great weight to this argument. It is a matter of common knowledge that prior to the passage of the Hail Insurance Act there had been but little leasing of lands by the state for crop purposes and that there had been practically no foreclosures of lands mortgaged to the state, while there was considerable farming upon homestead land before issuance of patent and considerable farming under leases of lands on Indian reservations. This history would naturally lead to an absence of provision for hail insurance upon lands leased from the state, while including one for insuring crops upon homestead and Indian lands.

It should be obvious that we decide nothing with respect to insurance upon crops growing upon lands which pass into the state ownership after the expiration of the period for withdrawal and before the tax is due. Such facts are not before us.

The order appealed from is affirmed.

NUESSLE, BURKE, BURR, and CHRISTIANSON, JJ., concur.